THE HONORABLE ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SCOTT R. PAULSON,

               Plaintiff,

     v.

PRINCIPAL LIFE INSURANCE
COMPANY,

               Defendant.

No.: 3:16-cv-05268-RJB

PLAINTIFF'S FRCP 52 MOTION FOR
TRIAL ON THE ADMINISTRATIVE
RECORD

Noted for Consideration: August 8, 2017

Oral Argument Requested

COMES NOW plaintiff, and moves, pursuant to FRCP 52 for entry of judgment overturning defendant's termination of long-term disability benefits, and providing the relief he has requested.

## I.     INTRODUCTION

Plaintiff Scott Paulson ("Paulson") suffered an industrial accident in 2008. AR 2063. Thereafter, he made a claim for benefits under his employer's long term disability plan ("Plan"), administered and insured by the Principal Life Insurance Company ("Principal"), which was approved on October 23, 2009. AR 1711. He received benefits under the Plan through April 29, 2015, when Principal determined he no longer met the Plan's definition of "disabled" and terminated his benefits. AR 1711.

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

Paulson seeks judicial review of Principal's determination that he is no longer eligible for insurance benefits under the Plan, which is governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001 *et seq.* ("ERISA").

## II.    DEFINITION OF DISABLED UNDER THE PLAN

The Plan states that:

> A Member will be considered Disabled if, solely and directly because of sickness, injury, or pregnancy:
>
> . . .
>
> After completing the Elimination Period and the Own Occupation Period, one of the following applies:
>
> > a. The Member cannot perform the majority of the Substantial and Material Duties of any Gainful Occupation for which he or she is or may reasonably become qualified based on education, training, or experience.
>
> . . . .

AR 12-13.

At the time of termination, both the Elimination and Own Occupation Periods had lapsed, and Principal asserted that Paulson could perform the "the majority of the Substantial and Material Duties of any Gainful Occupation for which he or she is or may reasonably become qualified based on education, training, or experience." AR 1712.

Gainful Occupation is defined under the Plan as:

> Employment in which the Member could reasonably be expected to earn an amount equal to or greater than the Primary Monthly Benefit.

AR 13.

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawpdx.com

There is no dispute that as of May 7, 2015, the Primary Monthly Benefit was $5,000.00, or $60,000.00 annually. AR 1713. Under the Plan, Paulson would be deemed disabled unless he could perform the Substantial and Material Duties of a job that paid at least $60,000.00 per year. By including this wage requirement, the Plan addresses disability in an economic sense. This is captured in the Plan when it says that an insured is disabled when they "cannot perform the majority of the Substantial and Material Duties of any Gainful Occupation for which he or she is or may reasonably become qualified based on education, training, or experience." AR 12-13. This language includes a reasonableness requirement – not only must the possible job exist, and not be hypothetical; *Kennard v. Means Indus.*, 555 Fed. Appx. 555, 2014 U.S. App. LEXIS 2846, 57 Employee Benefits Cas. (BNA) 2563, 2014 FED App. 0130N (6th Cir.), 2014 WL 553003 (6th Cir. Mich. 2014); but the insured must be a viable candidate for a position that pays at least $60,000.00 per year. *Haughton Elevator Co. v. Lewis*, 572 F.2d 447, 450 (4th Cir. 1978).

## III.  FACTS

Paulson is a 58 year old male, who worked as a truck driver from age 21 until suffering an industrial accident on December 5, 2008, when he was 50. AR 317-318. The last 20 years of his career were spent at the McLane Company in Tacoma, Washington ("McLane"). Paulson underwent surgery on January 20, 2009, but was left with permanent restrictions. AR 318. After being laid off from McLane on October 24, 2009 (AR 2063), Paulson became a real estate agent with the John L. Scott Realty office in Bonnie Lake, where he works to this day. AR 745-746.

Paulson obtained long-term disability ("LTD") benefits through a Plan McLane procured for its employees from Principal. AR 1-65. The Plan is an employee benefit plan as defined by ERISA.

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

Paulson's claim for LTD benefits was approved, and he received benefits from October 23, 2009 through April 29, 2015. AR 1711. On May 7, 2015, Principal denied continuing coverage under the Policy. AR 1711-1717. In response, Paulson appealed Principal's denial, and exhausted his administrative remedies with Principal to no avail.

## IV.   SUMMARY OF ARGUMENT

### A.   Title confusion and failing to engage in a meaningful dialogue.

Paulson's industrial injury prohibited his return to his occupation as a truck driver, triggering his layoff and coverage under his LTD Plan. AR 174 & 1711. After being laid off, Paulson took the requisite courses to become a real estate agent, successfully passed the exam, and obtained his license in 2010. AR 745-746.

In 2008, Washington revised its statutory code governing real estate professionals, engaging in something of "title inflation." Just as garbage men had become sanitation engineers, real estate agents, or salespersons as they were known in Washington, became "Brokers" and brokers became "Managing Brokers." Washington Session Laws 2008, Chapter 23, Section 1; 2007-2008 HB 2778. Other than a change in title, there was no meaningful change in duties for these two positions. See generally, Chapter 23, Section 1; 2007-2008 HB 2778; Chapter 18.85 RCW.

Washington's Department of Licensing, the agency which regulates Washington real estate professionals, notes the change in titles in the *faq* section of its website:

**Broker**: Formerly called a salesperson. A person licensed to perform real estate brokerage services. When active, the broker is licensed to a real estate firm/branch. See active/inactive.

**Managing Broker**: Formerly called a broker. A person licensed to perform real estate brokerage services. When active, the managing broker may work under the supervision of the designated broker or supervise other licensees within the firm/branch. See active/inactive.

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

**Designated Broker**: A person whose managing broker's license receives an endorsement from the department of "designated broker". This person acts on behalf of the firm with a controlling interest, overseeing operations. See http://www.dol.wa.gov/business/realestate/refaq.html#definitions (as of May 3, 2017).

This change in title confused Principal, as the DOT, O*Net, and other resources use the traditional titles of Agent and Broker when classifying and analyzing occupations.[1] AR 411 & 600.

Principal terminated Paulson's benefits in 2015 (AR 1711-1717) asserting that as an agent, he was capable of earning a median income of $65,290.00, well in excess of the Primary Monthly Benefit of $60,000.00. AR 1713. When asked to clarify its determination of an agent's median income, (AR 1655-1656), Principal acknowledged that it lacked an adequate basis to support it determination, but based on further review, learned that Paulson was a real estate broker, rather than an agent, and the national median wage for brokers is $80,420.00, so in any case, he would not meet the definition of "disabled." AR 1630-1638. Thus, prior to Paulson's appeal, Principal acknowledged that the basis for its termination was incorrect, showing that the termination was not the result of "a deliberate principled reasoning process . . . supported by substantial evidence;" *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991); See *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 635 (9th Cir. 2009); *Williams v. Metro. Life Ins. Co.*, No. C10-751 RBL, 2014 U.S. Dist. LEXIS 62135, at *10 (W.D. Wash. May 5, 2014)(decision is ". . . an abuse of discretion if it is not the product of a deliberate, principled reasoning process."); thereafter, it came up with new occupations it asserted Paulson was capable of

---

[1] To avoid confusion when discussing job titles in this memo, references to Washington State real estate professionals will be either Washington Broker or Washington Managing Broker. References to real estate professionals in general, will use the traditional titles of Agent and Broker.

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

performing in after the fact attempts to justify the termination. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 974 (9th Cir. 2006)("When an administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level, the administrator violates ERISA's procedures.")

Paulson's substantive arguments are simple: (1) While he is a Washington Broker, the proper title to use when using the DOT, O*Net, eDOT, or discussing the occupation on a national basis, is that of real estate agent, which has a median wage below the Primary Monthly Benefit; (2) Paulson, based on his "education, training, or experience," was not qualified for the other occupations listed by Principal in its denial of his mandatory and subsequent voluntary appeal and Principal's action in bringing up new occupations denied Paulson a meaningful dialogue; and (3) Paulson was not qualified to receive the median wage in the positions listed by Principal.

**B.    Standard of Review**

Paulson's procedural argument is also simple. Washington law bans discretionary clauses. As such the Plan must be interpreted as if no such clause was contained in the Plan.

**V.    ARGUMENT**

**A.    Substantive Argument – Principal's termination of Paulson's Benefits was arbitrary and capricious**

(a)    <u>Termination and Subsequent Change of Cause to Justify Termination</u>

A review of the file shows that Principal failed to engage in a deliberate, principled reasoning process, *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 635 (9th Cir. 2009); and thereafter failed to engage in a meaningful dialogue with Paulson, *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997); denying

Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's FRCP 52 Memorandum
Page 6 of 25

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawpdx.com

an opportunity for a full and fair review. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 974 (9th Cir. 2006).

Paulson's benefits were terminated by way of a letter dated May 7, 2015, based on an April 29, 2015 vocational review that found the median salary for a real estate agent is $65,290.00, which exceeds the Primary Monthly Benefit. AR 1711-1717. The only document in the administrative record pertaining to the April 29, 2015 vocation review is the following entry:

> VOC CONSULT Attendees: Krista Jones, Sheila Thompson Claimant has permanent restrictions as a result of his work related injury. R/L: capable of medium level work. No lifting over 40lbs from floor to waist, no lifting over 20lbs waist to chest, no use of left arm above chest level, no pushing or pulling more than 5lbs with left arm. Claimant worked for McLane for 20 years and another trucking company 10 years before that. He has a high school education and one year of college. Claimant was working with our voc staff and had completed a few college courses. Claimant expressed interest in a 4 year bachelors degree in business if Principal would cover the cost. We did not agree to fund his education. Claimant obtained his real estate license and has sold 6 homes to date. The Gainful Occupation definition of disability applies to the Any Occupation decision, and the claimant's pre-disability earnings were significant (over $100K annually.) An EA/LMS was completed. There were 0 occupations identified that satisfy the Gainful piece. Claim was approved beyond the A&A date. A settlement was discussed with the claimant but nothing was agreed upon. Claimant is not a candidate for SSDI. Question: Would the claimants experience in real estate change what would potentially come back in an EA? Discuss settlement? Discussion: Claimant's PDE is $106,870.44, 60% is $64,122.26 Claimant has a max MIB of $5,000, which is $60,000 a year Per voc review, median salary for a real estate agent is $65,290.00 Real estate agent was not included in the EA that was completed on 7-29-10 Would not consider settlement at this time since the claimant does not meet the definition of disability.

AR 199.

When asked to clarify how it arrived at the $65,290.00 median wage figure (AR 1655-1656), Principal acknowledged in a September 25, 2015 letter (AR 1630-1638) that it could not confirm the source for the $65,290.00 figure, so it ordered a Labor Market

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawpdx.com

Survey (LMS), which showed that the wage range for a Seattle based real estate agent is $40,000.00 - $100,000.00. AR 1632-1638. The LMS obtained by Principal concluded that the median wage was $50,000.00 – below the Primary Monthly Benefit. AR 1638.

While this should have been the end of the case, it wasn't, as Principal then went on to note:

> The website for John L. Scott Real Estate (www.scottp.johnlscott.com) shows that Mr. Paulson is a Real Estate Broker. According to the US Bureau of Labor Statistics, the mean (average) salary for a Real Estate Broker is $80,420.00.

AR 1630.

As noted in the Argument Summary section of this memo, Washington adjusted the titles of real estate agents and brokers in 2008 (Chapter 23, Section 1; 2007-2008 HB 2778; Chapter 18.85 RCW), moving from the traditional title of "Agent" and "Broker," to "Broker" and "Managing Broker." Id. Notwithstanding this title adjustment, the duties of each occupation remained substantially unchanged. Id.

Unfortunately, Principal had blinders on, not looking beyond Paulson's title, or attempting to engage him in any manner to confirm its assumption that his being a Washington Broker equated to the traditional role of a broker being the manager of a real estate office or firm. See AR 202-203 (12/10/15 note where Principal cites to the applicable RCW's, discusses the multiple types of broker licenses provided thereunder, but then focuses on his title to conclude that he is a broker as the term is traditionally defined.) *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968 (9th Cir. 2006)("A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, [or] fails adequately to investigate a claim or ask the plaintiff for necessary evidence. . . .")(internal citations omitted)

In addition to the difference in duties, are the additional steps that Paulson would have had to take to become a Washington Managing Broker. To go from a

Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's FRCP 52 Memorandum
Page 8 of 25

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

Washington Broker to a Washington Managing Broker, one must: (1) Have 3 years of experience as a Washington Broker; (2) Complete 90 hours of approved real estate education, which is in addition to the educational requirements to obtain a Washington Broker's license; and (3) Pass the managing broker's exam. RCW 18.85.111; WAC 308-124A-750.

      (b)    <u>Paulson's Mandatory Appeal</u>

Paulson appealed the termination by way of an October 26, 2015 letter (AR 735-1172) noting: (1) Principal's claim file lacked any type of documentary evidence to support the asserted median wage found by Principal's April 13, 2015 Vocational Review, which concluded that the median wage of real estate agents is $65,290.00; (2) the LMS obtained by Principal and cited to in its clarification letter of September 25, 2015, support's Paulson's position that the median wage of real estate agents is less than the Primary Monthly Benefit; (3) the proper occupational classification under the DOT or O*Net for Paulson is that of a real estate agent, not a broker; (4) the median wage for real estate agents is $40,248 (Seattle-Bellevue-Everett region) and $33,862 (Tacoma region), which is below the Primary Monthly Benefit; and (5) even if the occupational classification of broker were used, as suggested by Principal, the median wage range for this position is $54,829 (Seattle-Bellevue-Everett region) and $45,011 (Tacoma region), which is below the Primary Monthly Benefit.

Paulson also noted numerous other error's in the LMS and Principal's reasoning, such as Principal's use of data from the Seattle Metro area when Paulson resides and works in Pierce County. AR 737-740. These arguments aside, it does not change the fact that when using national data such as Bureau of Labor Statistics, DOT, or O*Net, the proper occupational classification to use is that of agent, and the median wage of an agent is below the Primary Monthly Benefit. AR 319-320.

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL. 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

//

(c)    <u>Denial of Mandatory Appeal – Principal Argues New Occupations</u>

Principal denied Paulson's Mandatory Appeal by way of a letter dated December 16, 2015. AR 383-390. In this letter, Principal continued to assert, based on Paulson's title, that he could perform the duties of a broker, and that

> Real estate brokers are licensed to manage their own businesses. Brokers, as independent business people, often sell real estate owned by others. In addition to helping clients buy and sell properties, they may help rent or manage properties for a fee. Many operate a real estate office, handling business details and overseeing the work of sales agents.

AR 384-385.

Based on its faulty assumption that Paulson was a broker (Washington Managing Broker), Principal jumped to the conclusion that he had management experience and experience operating a business. AR 384-385. From there, it concluded that he was qualified for several managerial positions, all of which paid a median wage above the Primary Monthly Benefit: (1) First-Line Supervisor of Transportation and Material-Moving Machine and Vehicle Operator; (2) Transportation, Storage, and Distribution Manager; and (3) Property, Real Estate, and Community Association Manager. AR 385.

The only evidence in the record is that Paulson is an agent - one of the least experienced agents in this office, and that has no management responsibilities. AR 319-320 & 745-746. Principal's failure to inquire into Paulson's managerial skill set and instead assuming he has such experience or ability, solely on his being licensed as a Washington Broker, was clear error. *O'Reilly v. Hartford Life & Accident Insurance Co.*, 272 F.3d 955, 961 (7th Cir. 2001)("ERISA does not require a 'full-blown' investigation, but it does demand a 'reasonable inquiry' into a claimant's medical condition and his

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

vocational skills and potential. If Hartford did not have evidence on which to base its conclusion, it would have acted unreasonably.")(internal citations omitted). In this case, Principal has a structural conflict, as such, it was ". . . obliged at a minimum to engage in an intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries." *Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1148 (7th Cir. 1998).

At the point where Principal was required to engage in a meaningful dialogue, the occupations it articulated was agent, and arguably broker. However, rather than limiting itself to these two occupations, Principal came up with three new occupations when denying the appeal. This practice of creating a moving target violates ERISA's full and fair review requirement and was before the court in *Feggins v. Reliance Std. Life Ins. Co.*, No. 11-cv-073-wmc, 2013 U.S. Dist. LEXIS 127113, at *3-4 (W.D. Wis. Sep. 5, 2013). In *Feggins*, the carrier rejected a claim asserting that the claimant could "perform the material duties of any occupation" listing three occupations it asserted claimant could perform in its denial letter, and then also stating that its "vocational staff was also able to identify other [qualified] occupations in addition to" the three identified occupations and invited claimant to order copies of the carrier's files related to claimant. *Id.*, at 3-4. Feggins appealed the denial, presenting evidence that she could not engage in the three specified occupations. *Id.*, at *4. Rejecting the appeal, the carrier withdrew its assertion that Feggins could perform the three occupations specified in the denial, now asserting a new occupation it alleged she could perform. *Id*. This new position had been identified by the carrier in its internal analysis, but was not specifically mentioned in the denial letter. *Id*. Rejecting this practice, the Feggins court noted:

> A determination of whether review has been "full and fair" must be made in
> context. While an administrator's "substantial compliance" with this requirement
> is sufficient to uphold his decision, id. at 690, the administrator must always

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

satisfy "the persistent core requirements of review intended to be full and fair," including "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Brown v. Retirement Comm. of Briggs & Stratton Ret. Plan*, 797 F.2d 521, 534 (7th Cir. 1986) (quoting *Grossmuller v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*, 715 F.2d 853, 858 n.5 (3d Cir. 1983)).

*Feggins*, 2013 U.S. Dist. LEXIS 127113, at *2-3.

[T]he fact that each occupation plaintiff was found capable of performing constituted an independently sufficient reason to deny her claim. Thus, swapping out all three originally-proposed, distinct occupations for a new, independent occupation amounts to advancing a new reason to deny the claim

*Feggins*, 2013 U.S. Dist. LEXIS 127113, at *9.

In summarizing its conclusion that switching occupations was arbitrary and capricious, as it was equivalent to switching grounds for the denial, thereby depriving Feggins of a full and fair review and acting in an arbitrary and capricious, the court held:

[T]he administrator carries the burden of articulating why it believes an applicant is capable (both physically and by dint of education and training) of performing a given occupation, even when the plan requires that the claimant prove she is incapable of performing "any occupation." If it were otherwise, the Plan would be taking the untenable position that it is plaintiff's burden to submit (at the outset) proof as to why she cannot perform each and every one of the hundreds of jobs listed in the Dictionary of Occupational Titles. Common sense dictates that the "any occupation" requirement means only that: (1) the

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

administrator is allowed to suggest any occupation of his choosing as grounds for denying a benefits claim; and (2) the claimant has the burden to show why she cannot do that job. Once the claimant has had her say, the administrator must still offer a rational explanation as to why it believes the claimant is capable of performing the job

*Feggins*, 2013 U.S. Dist. LEXIS 127113, at *15.

(d)    Voluntary Appeal

Paulson availed himself of a voluntary appeal allowed under the Plan by way of a February 3, 2016 letter. AR 316-323. This voluntary appeal included a Labor Market Survey (LMS) from Strategic Consulting Services, Inc. (SCS), dated October 12, 2015, with a February 2, 2016 addendum to address Principal's letter of December 16, 2015 denying Paulson's appeal. AR 317-323.

In its LMS, SCS details the basis for its determination that the proper occupational classification for Paulson is that of an agent rather than a broker, noting the difference between Washington's job titles and the traditional titles, and that a Washington Broker's license is best represented by SOC 41-9022.00 Real Estate Agents, as termed by the Bureau of Labor Statistics. Using that classification, SCS then looked at the Bureau of Labor Statistics 2015 Occupational Employment and Wage Estimates, which reports that the median wage for Real Estate Sales Agents in the Tacoma region is $32,677 per year and $37,835 per year in the Seattle-Bellevue-Everett region. AR 320.

Turning to the managerial positions Principal asserted Paulson was qualified to perform, SCS noted that Paulson's physical limitations, which include no lifting over 40 lbs. from floor to waist, no lifting over 20 lbs. waist to chest, no use of left arm above chest level, and no pushing or pulling more than 5 lbs. with left arm, disqualified him from the occupation of First-Line Supervisor of Transportation and Material-Moving Machine and Vehicle Operators, SOC 53-1031.00, in part because the duties include: (1)

Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's FRCP 52 Memorandum
Page 13 of 25

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

Inspect or test materials, stock, vehicles, equipment, or facilities to ensure that they are safe, free of defects, and consistent with specifications; (2) Drive vehicles or operate machines or equipment to complete work assignments or to assist workers; (3) Perform or schedule repairs or preventive maintenance of vehicles or other equipment; and (4) <u>Assist workers in tasks such as coupling railroad cars or loading vehicles</u>. AR 321. (Emphasis added)

SCS determined that Paulson was not qualified for the Transportation, Storage, and Distribution Manager, SOC 11-3071.00, occupation, noting:

> The O*Net reports that most employers require a four-year degree as well as considerable managerial experience to qualify for hire in these jobs. Mr. Paulson does not have four-degree and has never worked in a supervisory role. He has no knowledge or experience in administration and management principles, resource allocation, coordination of people and resources, or personnel recruitment or training. He is therefore not employable in any of these occupations in my professional opinion.

AR 322.

Finally, as to the Property, Real Estate, and Community Association Manager, SOC 11-9141.00, occupation, SCS noted that O*Net indicates that most people in these jobs have a 4 year degree, managerial experience, and the following knowledge base:

> - Administration and Management — *Knowledge of business and management principles* involved in strategic planning, resource allocation, human resources modeling, leadership technique, production methods, and coordination of people and resources.
>
> - Customer and Personal Service — *Knowledge of principles and processes for providing customer and personal services*. This includes customer needs assessment, meeting quality standards for services, and evaluation of customer satisfaction.

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

- Economics and Accounting — *Knowledge of economic and accounting principles and practices, the financial markets, banking and the analysis and reporting of financial data.*

- English Language — Knowledge of the structure and content of the English language including the meaning and spelling of words, rules of composition, and grammar.

- Clerical — Knowledge of administrative and clerical procedures and systems such as word processing, managing files and records, stenography and transcription, designing forms, and other office procedures and terminology.

and that:

The Washington Occupational Information System (WOIS), indicates that *a four-year degree is common preparation for hire* as a Property and Real Estate Manager in the State of Washington. Further, WOIS reports that some employers require Property Management certification to qualify for hire.

SCS concluded that:

Mr. Paulson does not have a four-year degree or Property Management certification. He does not have managerial experience or knowledge of business and management principles involved in strategic planning, resource allocation, human resources modeling, leadership technique, production methods, and coordination of people and resources. He does not have knowledge of economic and accounting practices. He does not have any experience whatsoever performing management of homeowner and condominium associations, rented or leased housing units, buildings, or land. Therefore, in my professional opinion Mr. Paulson is not qualified for employment in this occupation.

AR 322-323.

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawpdx.com

SCS also rejected use of wage data from the Seattle Metro area as Paulson works and resides in the greater Tacoma Metro area and the focus of his endeavors has been Pierce County. AR 323 & 745.

(e)     Denial of Voluntary Appeal

Principal denied Paulson's voluntary appeal by letter dated March 3, 2016, reasserting that Paulson was qualified for each of the occupations listed in its denial of mandatory appeal. AR 225-232. As to Paulson's argument that the proper market to pull wage data from is Tacoma, rather than Seattle, Principal asserted that both Tacoma and Seattle were proper markets to use for wage data (AR 226), but then listed wage data only from Seattle, whose wages are higher than Tacoma's. AR 385.

In its letter, Principal lists the job title, then provides a one paragraph overview of the position and its median wage. The letter provides no detail on why Principal opines Paulson may perform the job, nor does it respond to any of the points raised by SCS in its LMS. Because Principal reasserted the same occupations, Paulson will not repeat his arguments why he is not qualified or capable of performing them, and directs the court to page 14 of this memorandum.

Paulson would note as to the second of the three managerial positions put forth by Principal – Transportation, Storage, and Distribution Manager - in the first line of Principal's description of the job, it states "This occupation requires equivalent to a four year college degree." AR 227. Paulson does not hold a college degree. AR 322. The Administrative Record contains an eDOT Job Analysis for the position of Transportation Manager (AR 688-693) which notes the position has a Specific Vocational Preparation (SVP) of 7. SVP is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information and develop the facility needed for average performance in a specific job-worker situation." See Page 21, http://www.erieri.com/help/edot.pdf, Occupational Assessor® (eDOT® /

ROY LAW
1000 SW Broadway, #1740
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawpdx.com

eDOT+) Help, Copyright © 2014 ERI Economic Research Institute, Inc. An SVP of 7

means "Over 2 years up to and including 4 years" of training. AR 688. The record is

devoid of any evidence showing that Paulson has any office or managerial experience.

Rather, SCS notes that the opposite is true and that he lacks such experience. AR 322.

The SVP also establishes that Paulson would not be entitled to the median wage. The

eDOT further indicates that the education level is "Equivalent to a four year college

degree, which Paulson does not have. AR 692. Again, showing that he is not qualified

and if hired, would not be qualified to receive a median wage.

      (f)    <u>Principal May Not Suggest New Occupations on Appeal</u>

      Principal terminated Paulson's benefits based on its faulty assertion that the

median wage for agents is $65,290 AR 1630. It then changed its argument to assert that

Paulson was a broker and the median wage of brokers is $86,410. AR 1630. In denying

Paulson's appeal, Principal continued to assert that Paulson was a broker (Washington

Managing Broker), but then came up with new occupations it argued would serve as

Gainful Occupations. Changing occupations was akin to coming up with new grounds

for termination. A practice repeatedly rejected by the courts. *Care First Surgical Ctr. v.*

*ILWU-PMA Welfare Plan*, 2014 U.S. Dist. LEXIS 183596 (C.D. Cal. Dec. 26, 2014)("The

Ninth Circuit has recognized that an insurer is required to provide a reason for denying

a claim when communicating the denial, and will be deemed to have waived the right

to rely on any reason not cited in the denial letter"); *Harlick v. Blue Shield of California*,

686 F.3d 699, 719 (9th Cir. 2012) ("A plan administrator may not fail to give a reason for

a benefits denial during the administrative process and then raise that reason for the

first time when the denial is challenged in federal court, unless the plan beneficiary has

waived any objection to the reason being advanced for the first time during the judicial

proceeding"); See also, *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d

Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's FRCP 52 Memorandum
Page 17 of 25

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

1192, 1199 n. 2 (9th Cir. 2010); *Aceves v. Allstate Insurance Co.*, 68 F.3d 1160, 1163-64 (9th Cir. 1995).

Requiring that plan administrators provide a participant with specific reasons for denial "enable[s] the claimant to prepare adequately for any further administrative review, as well as appeal to the federal courts." "[A] contrary rule would allow claimants, who are entitled to sue once a claim has been 'deemed denied,' to be 'sandbagged' by a rationale the plan administrator adduces only after the suit has commenced."

*Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1199 n.2 (9th Cir. 2010) (quoting *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (9th Cir. 1992), and *Jebian v. Hewlett-Packard Co., Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1104 (9th Cir. 2003)).

Based thereon, Principal should be deemed to have waived any occupation not stated in Principal's May 7, 2015 letter terminating benefits.

(g)      Principal's Focus on Paulson's Title was Clearly Erroneous

While Paulson will assert that this matter is subject to de novo review, even if it is subject to the arbitrary and capricious standard, Principal's assertion that Paulson is qualified for the occupation of broker – a Washington Managing Broker, was clearly erroneous as he does not have the needed education, nor has he passed, or is there any showing that he can pass, the needed exam, warranting reversal. *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 266 F.3d 1130, 370 F.3d 869, 875 (9th Cir. 2004). Further, Paulson has produced his income tax returns for the years 2012-2014 and commission history through October 23, 2015. (AR 747-1172) During this period, he sold no homes in 2010, 4 homes in 2011, 5 homes in 2012, and 8 homes in each of 2013, 2014, and 2015 (through October 23). This performance given the steadily progressing market, the housing demand placed on Pierce County by JBLM, and the Seattle region

Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's FRCP 52 Memorandum
Page 18 of 25

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

being one of the strongest housing markets in the nation, strongly suggest that Paulson

would not receive the median wage – a wage where he is paid more than 50% of the

agents, or even the brokers, in the market.

      (h)     <u>Principal's Use of the Median Wage was Clear Error</u>

      Principal's denial was also erroneous as it used median wage data to justify its

termination when Paulson had no experience in any of the managerial jobs that

Principal was asserting for the first time he was qualified when denying his appeal. See

*Del. Elevator, Inc. v. Williams*, No. 5596-VCL, 2011 Del. Ch. LEXIS 47, at *26 (Ch. Mar. 16,

2011)(In discussing the validity of a noncompete agreement, the court noted "A person

who holds an entry-level job faces little opportunity cost if forced to take an entry-level

job in a different field. Williams has been in the workforce since 1977, some thirty-four

years. He has spent nearly two decades in the elevator repair industry, rising to a

position that paid him an above-median wage. He has a wife, a home, and longstanding

personal ties to the tri-state area. He cannot readily relocate. Nor can he reasonably be

expected suddenly to find an equivalent job in a different field. If subjected to Delaware

Elevator's proposed restrictions, Williams and his family would suffer substantial and

irreparable hardship. Delaware Elevator's lawyers might well consider how they would

fare if forced to restart in a far-off jurisdiction, to reinvent themselves as practitioners in

a completely different subject-matter area, or to leave the law entirely and find

employment in another industry.")

      Use of the median wage by the carrier, to conclude that an insured is capable of

earning a sufficient wage to disqualify them from LTD benefits was at issue in *Lavoie v.*

*Betz Laboratories Inc.*, 2002 DNH 130; 29 Emp. Bene. Cas. (BNA)(1178); 2002 U.S. Dist.

LEXIS * 13083 (D.N.H. 2002). Rejecting the carrier's use of median wage, the court held

      Even if I were to accept MetLife's unreasonable interpretation of the past

      earnings provision, I could not accept its arbitrary determination that Lavoie had

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL. 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

the capacity to earn at least 60% of his Basic Monthly Earnings by working as either a financial planner or a financial advisor. MetLife claims that Lavoie has the capacity to replace at least 60% of his Basic Monthly Earnings by working as a financial planner because: (1) the median salary for financial planners in New Hampshire exceeds 60% of Lavoie's Basic Monthly Earnings; and (2) Lavoie is qualified to work as a financial planner. To make this syllogism work, however, one must assume that Lavoie not only has the capacity to work as a financial planner but also that he has the capacity to earn as much or more than what half of the financial planners currently working in New Hampshire are able to earn. Because there is not a shred of evidence in the record to support this assumption, MetLife cannot base its decision to terminate Lavoie's benefits on its conclusion that he has the capacity to work as a financial planner.

(Emphasis Added).

(i)     Paulson's Benefits should be reinstated.

Paulson's benefits were improperly terminated due to Principal's incorrect assertion that the median wage of real estate agents exceeds the Primary Monthly Benefit. AR 1711-1717. Principal acknowledged this error when it abandoned the argument. AR 1630-1638. Thereafter, Principal engaged in a course of arbitrary and capricious conduct by asserting new positions Paulson could perform. Because of this wrongful conduct, Paulson's benefits must be reinstated, with back benefits from the date of improper termination being awarded. *Pannebecker v. Liberty Life Assur. Co.*, 542 F.3d 1213, 1221 (9th Cir. 2008)("[I]f an administrator terminates continuing benefits as a result of arbitrary and capricious conduct, the claimant should continue receiving benefits until the administrator properly applies the plan's provisions. See *Grosz-Salomon*, 237 F.3d at 1163 (stating that benefits should be reinstated where 'but for [the

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

insurer's] arbitrary and capricious conduct, [the insured] would have continued to receive the benefits' (internal quotation marks and citation omitted)).

**B.      Standard of Review**

The Western District of Washington has interpreted the policy in dispute and found it is subject to a de novo standard of review. *Flaaen v. Principal Life Ins. Co.*, No. C15-5899BHS, 2016 U.S. Dist. LEXIS 177638, *5-6 (W.D. Wash. Dec. 22, 2016). Strikingly, *Flaaen* involved not just the same carrier and policy, but the same employer, and a claim by another truck driver employee whose LTD benefits were terminated. After finding that the policy was subject to Texas law, Judge Settle engaged in a conflict of law analysis to determine if Washington law, most importantly, Washington's rule prohibiting discretionary clauses, WAC 284-96-012, controlled:

> Finally, Flaaen argues that, if Texas law applies, the Court should decline to enforce the discretionary clause as a matter of public policy. Dkt. 16 at 12-15. "Washington courts will not implement a choice of law provision if it conflicts with a fundamental state policy . . . ." *Ito Int'l Corp. v. Prescott, Inc.*, 83 Wn. App. 282, 288, 921 P.2d 566 (1996) (citing *Rutter v. BX of Tri—Cities, Inc.*, 60 Wn. App. 743, 746, 806 P.2d 1266 (1991)). Fundamental public policy is generally found in legislative enactments declaring certain types of contracts illegal. Restatement (Second) Conflict of Laws § 187 cmt. g. Specifically, "[s]tatutes involving the rights of an individual insured as against an insurance company are an example of this sort [of fundamental policy]." *Id.* The Court should also balance the state's competing policies:

> > The forum will apply its own legal principles in determining whether a given policy is a fundamental one within the meaning of the present rule and whether the other state has a materially greater interest than the state of the chosen law in the determination of the particular issue.

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

*Id.*

In this case, the Court must balance competing interests. The interests in Principal's favor are (1) when the Plan was issued Texas allowed discretionary clauses and (2) national uniformity of determining the rights under the Plan. On December 23, 2010, however, Texas banned discretionary clauses. 28 Tex. Admin. Code § 3.1203. The legislative history of Washington's ban on such clauses states that the ban is consistent with National Association of Insurance Commissioners' endorsement of a ban on these clauses "as well as similar prohibitions adopted by other state insurance regulators." http://lawfilesext.leg.wa.gov/law/wsr/2009/07/09-07-030.htm (last visited December 21, 2016). In sum, the Court finds that the balance falls in Flaaen's favor. The national trend is to ban such clauses, and the Washington Insurance Commissioner stated that the clauses are "prohibited . . . because they unreasonably or deceptively affect the risk purported to be assumed in the general coverage of the agreement." *Id.* The Court declines to enforce a clause that is unreasonable and deceptive. Therefore, the Court concludes that enforcement of the discretionary clause would violate a strong public policy in Washington.

*Flaaen v. Principal Life Ins. Co.*, No. C15-5899BHS, 2016 U.S. Dist. LEXIS 177638, at *12-14 (W.D. Wash. Dec. 22, 2016). By reference, Paulson adopts the arguments made by Plaintiff in *Flaaen*. *Flaaen*, supra, Dkt. 16, 18, 22, & 24.

Under de novo review, the court gives no deference to the insurance company's denial and conducts an FRCP 52 trial on the administrative record where the court makes factual findings, evaluates credibility, and independently weighs evidence to determine entitlement to benefits. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999); *Rabbat v. Standard Ins. Co.*, 894 F.Supp 2d 1311, 1314 (D. Or 2012) (citations omitted). However, a de novo standard of review "does not relieve the plan

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

administrator from its duty to engage in a 'meaningful dialogue' with the claimant about his claim." *Bunger v. Unum Life Ins. Co. of Am.*, 196 F. Supp. 3d 1175, 1186 (W.D. Wash. 2016); *Watson v. Metro Life Ins. Co.*, No. CV-11-01393-PHX-GMS, 2012 WL 5464986, at *9 (D. Ariz. Nov. 7, 2012)("This proceeding is a trial on the administrative record, and Watson's allegations go to the weight that the Court should assign the evidence and conclusions of the MetLife consultants. If all of these issues would be relevant in an abuse of discretion case, they are just as relevant in a de novo case. Therefore, Watson's various claims regarding the MetLife review process are relevant to the credibility of MetLife's evidence.")

    If the court disagrees with the reasoning in *Flaaen* and determines that this matter is subject to an abuse of discretion review, then Principal's decision requires deference unless it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts on the record." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (internal quotation marks omitted). The Ninth Circuit has held that an "ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan,* 410 F.3d 1173, 1178 (9th Cir. 2005). An abuse of discretion is proven when the court is left with a "definite and firm conviction that a mistake has been committed." *Salomaa,* 642 F.3d at 676.

    A heighted standard of abuse of discretion review is employed when, as in this case, the "the insurer acts as both funding source and administrator[,]" because a structural conflict of interest exists that "must be weighed as an additional factor in determining whether there is an abuse of discretion." *Salomaa*, 642 F.3d at 674 (internal quotation marks omitted). Certain negative conflict factors increase the degree of skepticism that informs abuse of discretion of review, and one of those factors is a

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

"fail[ure to] credit a claimant's reliable evidence". *Abatie*, 458 F.3d at 968–69. Additional factors include "whether the administrator (1) ignored [plaintiff's] self-reports that are inherently subjective and not easily determined by objective measurement; (2) had a meaningful dialogue with [plaintiff] in deciding whether to approve the benefits claim; (3) spoke with [plaintiffs]' doctors without notifying him, (4) took [plaintiff]' doctors' statements out of context or otherwise distorted them, or (5) conducted a "pure paper' review. *Collins v. Liberty Life Insurance Company of Boston*, 988 F. Sup 2d, 1126-1127 (CD Cal. 2013)(citations omitted).

In this matter, Principal is both the administrator and funding source. Principal further failed to engage in a meaningful dialogue with Paulson, as is detailed above, warranting a heighted standard of abuse of discretion review.

## VI.    CONCLUSION

Paulson's benefits were improperly terminated when Principal wrongfully asserted that the median wage of real agents exceeded the Primary Monthly Benefit. Thereafter, Principal abandoned the basis of for its termination, asserting a new ground, which was clearly erroneous. Thereafter, it came up with even more occupations, all based on the faulty assumption that Paulson was a broker and therefore had managerial and business experience. Because of this wrongful conduct, Paulson's benefits must be reinstated, with back benefits from the date of improper termination being awarded. *Pannebecker v. Liberty Life Assur. Co.*, 542 F.3d 1213, 1221 (9th Cir. 2008).

DATED this 30th day of June 2017.

/s/ Chris Roy
Chris Roy, WSB # 29070
Roy Law
1000 Broadway, Ste. 1740
Portland, OR 97205
PH: 503-206-4313
FAX: 855-344-1726
chris@roylawpdx.com

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

## CERTIFICATE OF SERVICE

I certify that on June 30, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorneys/parties of record.

DATED this 30th day of June 2017.

/s/ Chris Roy
Chris Roy, WSB # 29070
Roy Law
1000 SW Broadway, Suite 1740
Portland, OR 97205
PH: 503-206-4313
FAX:855-344-1726
chris@roylawpdx.com

ROY LAW
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com