Hon. Robert J. Bryan

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| SCOTT R. PAULSON,<br><br>               Plaintiff,<br><br>vs.<br><br>PRINCIPAL LIFE INSURANCE COMPANY,<br><br>               Defendant. | Case No. 3:16-cv-05268-RJB<br><br>**DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>**TRIAL DATE: August 8, 2017 at 9:30 am** |

## I.   INTRODUCTION

In this lawsuit, Plaintiff Scott R. Paulson ("Plaintiff") seeks continued long term disability benefits under an employee welfare benefit plan, afforded by his former employer McLane Company, Inc. ("McLane") to its eligible employees, including Plaintiff. McLane's Long Term Disability Plan ("Plan") is insured by Group Policy No. GLT H25974 ("Group Policy") issued by Principal Life Insurance Company ("Principal Life" or "Defendant"). In addition to insuring the Plan, Principal Life is the claims administrator and, as such, has full discretionary authority to interpret the terms of the Plan and make eligibility determinations.   The parties agree that the Group Policy is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 1
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2350700v.1

1001, *et seq.* ("ERISA").  The sole issue before the court is whether Principal Life's determination that Plaintiff did not satisfy his burden of proof relative to benefit eligibility under the Group Policy was reasonable, and thus, not arbitrary and capricious.

Plaintiff left his employment as a truck driver with McLane on December 5, 2008 and in October 2009 applied for disability benefits with Principal Life. The Group Policy defines Total Disability during the first 12 months as the inability to perform one or more of the Material and Substantial Duties of the claimant's Own Occupation. Thereafter, benefit entitlement requires that the claimant cannot perform the majority of the Substantial and Material Duties of any Gainful Occupation for which he or she is or may reasonably become qualified based on education, training, or experience.

Based on the results of its investigation, including the classification of Plaintiff's Own Occupation as being performed at a heavy physical exertion level and the opinions of Plaintiff's treating physicians, Principal Life approved and paid long term disability benefits to Plaintiff for the full 12 months "Own Occupation" period.  Thereafter, based on the results of its ongoing investigation, Principal Life approved continued benefit payments.

During the following years, Plaintiff's treating physicians cleared Plaintiff for medium strength work. In light of same, and given Plaintiff's real estate license and work experience since 2010, Principal Life terminated Plaintiff's benefits in April 2015. Supported by an independent labor market survey and significant vocational research, which identified several Gainful Occupations in the local community within Plaintiff's physical limitations and restrictions as well as reasonably fitted based on his education, training or experience, Principal Life upheld its determination through two levels of appeals. Principal Life's final determination was made on March 3, 2016 and on April 7, 2016, Plaintiff filed the present action.

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE
52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 2
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2350700v.1

Plaintiff is currently working as a real estate broker in Bonney Lake, Washington, and sold 14 properties during the last 12 months, totaling $4,594,638 in real estate sales from July 2016 through June 2017.

Principal Life's decision to terminate Plaintiff's benefits should be affirmed because the record before this Court unequivocally demonstrates that Principal Life's determination that there are Gainful Occupations reasonably fitted to Plaintiff's education, training or experience as well as within his physical restrictions is at least reasonable. Therefore, Plaintiff failed to meet (and can never meet) the Group Policy's definition of disability for the period in question. Plaintiff is neither entitled to additional benefits nor to any other relief that he seeks. This Court should enter judgment in favor of Principal Life, even if it applies a *de novo* standard of review.

## II.   FACTUAL BACKGROUND

### A.   Relevant Group Policy Language

The Group Policy establishes the following benefit qualifications:

A Member will qualify for Disability benefits if all of the following apply:

a.   The Member is Disabled under the Terms of the Group Policy.
b.   The Disability begins while he or she is insured under this Group Policy.
c.   The Disability is not subject to any Limitations listed in this PART IV, Subsection O.
[…]
f.   The Member is under the Regular and Appropriate Care of a Physician;
g.   The claim requirements listed in this PART IV, Section Q are satisfied. […]

(AR 36)

The Group Policy defines Disability and Disabled as follows:

A Member will be considered Disabled if, solely and directly because of sickness, injury or pregnancy:

During the Elimination Period and the Own Occupation Period, one of the following applies:

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 3
Case No. 3:16-cv-05268-RJB

2350700v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

1

2
     a.  The Member cannot perform one or more of the Substantial and Material Duties of his or her Own Occupation.
       […]

3

4
After completing the Elimination Period and the Own Occupation Period, one of the following applies:

5

6
a. The Member cannot perform the majority of the Substantial and Material Duties of any Gainful Occupation for which he or she is or may reasonably become qualified based on education, training, or experience.
  […] (AR 36-37)

7
Own Occupation is defined in the Group Policy as the occupation the Member is routinely

8
performing when Disability begins as performed in the ***national economy***.  (AR 38)

9
Gainful Occupation is defined in the Group Policy as Employment in which the Member

10
could reasonably be expected to earn an amount equal to or greater than the Primary Monthly

11
Benefit. (AR 38)

12
Under the Group Policy, benefits do not continue beyond:

13
     a.  the date of the Member's death; or
     b.  the date Disability ends, unless a Recurring Disability exists as explained in this section; or

14

15
     c.  the date the Member fails to provide any required proof of Disability; or […]
     e.  the date the Member fails to report any required Current Earnings information; or […]

16
(AR 50)

17
**B.  Initial Claim Submission and Approval of Plaintiff's Claim.**

18
Plaintiff (born 1958) left his regular occupation as a truck driver ("Driver A" (AR 2349)),

19
a heavy exertion occupation (AR 1693, job description AR 2323), on December 5, 2008 after

20
experiencing a rotator cuff injury with subsequent repair (AR 2354, 2336, 2309-2313).

21
Subsequently, on October 19, 2009, Plaintiff applied for long term disability benefits with

22
Principal Life. (AR 2353-2357, 2341) Principal Life acknowledged receipt of Plaintiff's claim on

23
DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 4
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

24

October 20, 2009 and provided more detailed information relative to its claim review to Plaintiff in correspondence dated October 30, 2009. (AR 2350, 2325)

Principal Life received medical records on October 23, 2009 from Plaintiff's treating physician, orthopedic surgeon Dr. Craig T. Arntz, who on September 24, 2009, status post repair of a large left rotary cuff tear on January 20, 2009, restricted Plaintiff from lifting in excess of 50 lbs from the floor to waist level, from activities requiring any lifting above the mid chest to shoulder level in excess of 20 lbs and/or requiring repetitive use of the left shoulder and arm at or above the mid chest to shoulder level, indicating that he was unable to return to his previous line of work as a truck driver. (AR 2340, 2336) On a completed Attending Physician's Statement, Dr. Arntz denied mental impairment and did not believe that Plaintiff had achieved maximum medical improvement yet, expecting a functional change in more than 6 weeks. (AR 2336)

On April 26, 2010, Principal Life approved Plaintiff's claim effective April 22, 2010 and informed Plaintiff of the change in definition on April 21, 2011, requiring an inability to work at any Gainful Occupation going forward.  (AR 2157-2162)  In correspondence dated May 12, 2010, Principal Life informed Plaintiff of vocational services available to him under the Group Policy. (AR 2150-2152)  On May 14, 2010, Principal Life received an assessment closing report from Strategic Consulting Services, Inc. in connection with Plaintiff's worker's compensation claim, informing that Plaintiff was able to return to work as a Courier/Light Duty Delivery Driver with permanent restrictions of lifting up to 40 pounds from floor to waist level and up to 20 pounds above waist level and very limited use of the left arm at or above mid-chest to shoulder level.  (AR 2146-2148)

**C. Principal Life's Continued Review of Plaintiff's Claim and Termination of Benefits.**

On June 8, 2010, Principal Life discussed working as a real estate agent with Plaintiff and

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 5
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2350700v.1

1  Plaintiff provided information relative to fees and commission rates, starting out at 3% of 50% of a

2  sale until a threshold was met, at which point commissions increased to 3% of 100% of the sale.

3  (AR 1686) On June 16, 2010, Principal Life requested an independent Employability

4  Assessment/Labor Market Survey from Adling & Associates. (AR 2130-2133)  On July 29, 2010,

5  Principal Life received Amanda J. Ruhland, M.A., C.R.C.'s report, indicating that Plaintiff would

6  qualify for the alternative occupations of Service Writer, Security Guard and Parts Clerk, none of

7  which were Gainful, however. (AR 2063-2077) While the Labor Market Sampling additionally

8  identified the Gainful Occupations of Manager, Truck Terminal and Supervisor, Terminal

9  Operations, employers surveyed required either an Associate's or a Bachelor's Degree in a

10 business related field, which Plaintiff did not have.   (AR 2074-2076) The Employability

   Assessment did not consider real estate agent as an alternative occupation. (Id.)

11
        On September 28, 2010, Principal Life learned that Plaintiff had indeed obtained his real

12 estate broker license and was working 20 to 40 hours per week but had had no sales so far[1]. (AR

13 2060)  On October 5, 2010, Principal Life followed up on the information that Plaintiff was

14 working, requesting monthly profit/loss statements to be able to accurately calculate Plaintiff's

15 monthly disability benefit. (AR 2051-2054)

16      Principal Life requested updated medical records in December 2010 and learned that there

17 were no updated records for treatment with Plaintiff's family doctor Dr. Joseph Slotkin since

18 January 1, 2010. (AR 2035) Orthopedic surgeon Dr. Arntz saw Plaintiff last in June 2010 and

19 noted that Plaintiff's claim would be closed by his June evaluation. (AR 2025-26)

20
        [1] The Washington State Department of Licensing indicates that Plaintiff obtained his Real
21 Estate Broker license on June 24, 2010, working in Bonney Lake, WA, and his license remains active.
   https://fortress.wa.gov/dol/dolprod/bpdLicenseQuery/lqsLicenseDetail.aspx?RefID=440277     (last
22 visited on June 26, 2017); see also http://www.scottp.johnlscott.com/?p=resume.asp&sortOrder=1 (last
   visited June 26, 2017).

23 DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR          *Wilson Elser Moskowitz Edelman & Dicker LLP*
   JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE                          *55 West Monroe Street, Suite 3800*
   52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 6                               *Chicago, Illinois 60603*
24 Case No. 3:16-cv-05268-RJB                                                          *Tel.: (312) 821-6162*
                                                                                      *Fax: (312) 704-1522*

2350700v.1

On May 9, 2011, Principal Life provided Plaintiff with an update relative to his disability claim, including noting his first home sale and approving his claim for benefits beyond April 22, 2011. (AR 2015- 2016)  On June 9, 2011, Principal Life noted Plaintiff's web address relative to his employment with John L. Scott Real Estate. (AR 1987) On June 28, 2012, Principal Life requested updated medical information from Dr. Arntz, which showed no change in Plaintiff's condition. (AR 1968, 1962, 1954-1955)  Dated February 7, 2013, Dr. Arntz provided a completed Attending Physician's Statement, setting out that Plaintiff was last seen in his office on January 18, 2012 and was capable of medium exertional level activity. (AR 1942-1943) Dr. Arntz's statement repeated the weight restrictions previously placed on Plaintiff and identified him working as a real estate broker. (Id.)  Throughout 2013 Plaintiff continued to work as a real estate broker and submitted monthly information relative to commissions received. (AR 1938-1917, 1900-1901)

On January 11, 2014, Principal Life followed up requesting updated medical records. (AR 1898)  Dr. Arntz provided a completed Attending Physician's Statement dated February 12, 2014, which was in essence unchanged from his February 7, 2013 statement. (AR 1942-1943, 1893-1894) Dr. Arntz indicated that Plaintiff's condition was stable and did not need any further treatment. (Id.) On Plaintiff's completed continued disability statement dated February 8, 2014, Plaintiff identified right knee arthritis treated in October 2013. (AR 1890-1891, 1862-1865)  On February 3, 2014, Plaintiff underwent a total knee replacement with Dr. William P. Barrett. (AR 1870-1872)  Subsequent to his surgery, Dr. Barrett completed a knee evaluation form and indicated that Plaintiff was able to do moderate labor, could walk in excess of 10 street blocks and walk up and down stairs with rails but otherwise needed no support. (AR 1866)

Throughout 2014 and 2015, Plaintiff continued to work as a real estate broker, providing information relative to his commissions. (e.g. AR 1838-1848, 1823-1824, 1807-1808)  In a

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 7
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2350700v.1

telephone conference on February 27, 2015, Plaintiff revealed that he was no longer treating with Dr. Barrett and that his knee was not disabling.  (AR 197) He further stated that he had not applied for Social Security Disability Income Benefits ("SSDI"). (Id.) While Plaintiff also stated that Dr. Arntz was the only physician placing restrictions on him (id.), he had not seen Dr. Arntz since prior to January 1, 2013. (AR 1713)

On April 29, 2015, Vocational Rehabilitation Specialist Sheila Thompson was consulted as part of a vocational consult on Plaintiff's claim and Ms. Thompson provided the opinion based on her experience and research that the median salary for a real estate agent was $65,290.00. (AR 199)  On May 7, 2015, Principal Life terminated Plaintiff's claim for benefits beyond April 29, 2015, relying on the vocational assessment performed by Sheila Thompson, which was able to identify an annual median salary for real estate agents of $65,290, making it a Gainful Occupation as defined in the Group Policy. (AR 1713, 1686-1687)

**D.  Plaintiff's Appeal and Principal Life's Determination to Uphold.**

On July 22, 2015, Principal Life received Plaintiff's request for documents (AR 1705-1709), which Principal Life responded to on August 10, 2015. (AR 1660, 1658)  Plaintiff followed up with correspondence dated September 1, 2015, requesting information pertaining to the vocational assessment referenced in Principal Life's termination letter (AR 1655-1656)   On September 15, 2015, Principal Life referred Plaintiff's claim to Adling & Associates for an independent employability assessment and labor market survey relative to the occupation of a real estate agent. (AR 1651-1652) Vocational Consultant Mr. Thomas Ehlert, MS, CRC/R, provided his report on September 18, 2015, identifying a median salary of about $50,000; however, listing several employers in the Seattle area reporting income of $60,000 to over $100,000.  (AR 1645-1648)  Principal Life forwarded the labor market survey to Plaintiff's counsel on September 25,

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 8
Case No. 3:16-cv-05268-RJB

2350700v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2015, explaining that it had been conducted with a view towards the occupation of real estate sales agent. (AR 1630-1631) Principal Life's correspondence informed Plaintiff further of the fact that his employer's website identified him as a real estate broker rather than a real estate sales agent and that the mean salary for a real estate broker was $80,420.00 in accordance with the US Bureau of Labor Statistics. (Id.)   *Compare https://www.bls.gov/oes/current/naics4_531200.htm (last visited June 27, 2017).*

| Occupation code | Occupation title | Group | Employment | Employment RSE | Percent of total employment | Median hourly wage | Mean hourly wage | Annual mean wage | Mean wage RSE |
|---|---|---|---|---|---|---|---|---|---|
| 41-9020 | Real Estate Brokers and Sales Agents | broad | 86,850 | 2.1% | 28.90% | $22.90 | $32.00 | $66,570 | 2.1% |
| 41-9021 | Real Estate Brokers | detail | 23,410 | 4.1% | 7.79% | $28.36 | $39.82 | $82,820 | 4.1% |
| 41-9022 | Real Estate Sales Agents | detail | 63,440 | 2.7% | 21.11% | $21.23 | $29.12 | $60,570 | 2.3% |

On October 26, 2015 Plaintiff requested a reconsideration of the termination of his claim. (AR 1622-1628)  Along with his appeal, Plaintiff submitted a report prepared by Anne Kemerer Jones, M.Ed., CRC, of Strategic Consulting Services, Inc., opining as to the character of Plaintiff's job with John L. Scott Real Estate only.  (AR 1186-1187) Plaintiff conceded the ability to work full time in any occupation; however, argued that he was continuously entitled to disability benefits under the Group Policy on the basis that he was working as a Real Estate Sales Agent and was not earning enough money as to be Gainfully employed.  (AR 1622-1628)  On October 30, 2015, Principal Life confirmed receipt of Plaintiff's appeal. (AR 1616-1617)

An updated record check on Plaintiff completed on November 16, 2015 revealed his profile on realtor.com, which stated that he has 5 years of experience and specialized in Buyers, First Time Homes Buyers, Sellers, Foreclosures, Investors, Relocate, Reo's, Short Sales. (AR 707) The areas served were listed as Auburn, Federal Way, Kent, Orting, Pacific, Puyallup, Renton,

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 9
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2350700v.1

1    Sumner and Tacoma and the price range was listed as $130,000.00 through $353,000.00. (Id.)

2    Principal Life further completed extensive vocational research relative to the occupations of Real

3    Estate Broker, Transportation Manager, Truck Driver Supervisor and Property Manager. (AR 405)

4    The research included occupational analyses, wage date based on the U.S. Bureau of Labor

5    Statistics as well as identification of potential employers in the Seattle-Tacoma area. (Id., AR 406-

6    705) The research found that all of the identified alternative occupations, including Real Estate

7    Broker, were Gainful as defined by the Group Policy (i.e. had a median salary in excess of

8    Plaintiff's scheduled monthly benefit, or $60,000 annually) and Principal Life specifically

9    considered wage data for the Seattle-Bellevue-Everett, WA area. (AR 406)

10         Given the results of its research, Principal Life upheld its termination of Plaintiff's claim in

11   correspondence dated December 16, 2015. (AR 392-395)   Along with explaining that Plaintiff

12   could work as a Real Estate Broker and was licensed to do so – and was actually working as a Real

13   Estate Broker -- which was a Gainful Occupation, Principal Life explained that Plaintiff was also

14   physically able to and qualified based on education, training or experience to perform the Gainful

     Occupations of:

15
16        First-Line Supervisor of Transportation and Material-Moving Machine and Vehicle
          Operator, BLS Median Salary $66,980.00: Responsible for directly supervising and
17        coordinating activities of transportation and material-moving machine and vehicle
          operators and helpers;

18        Transportation, Storage, and Distribution Manager, BLS Median Salary $101,220.00:
          Responsibilities include planning, directing, or coordinating transportation, storage,
19        or distribution activities in accordance with organizational policies and applicable
          government laws or regulations. Includes logistics managers.

20        Property, Real Estate, and Community Association Manager, BLS Median Salary
          $67,700.00: Responsible for planning, directing, or coordinating the selling, buying,
21        leasing, or governance activities of commercial, industrial, or residential real estate
          properties. Includes managers of homeowner and condominium associations, rented
22        or leased housing units, buildings, or land (including rights-of-way). (AR 385)

23   DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR              *Wilson Elser Moskowitz Edelman & Dicker LLP*
     JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE                        *55 West Monroe Street, Suite 3800*
     52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 10                                      *Chicago, Illinois 60603*
24   Case No. 3:16-cv-05268-RJB                                                            *Tel.: (312) 821-6162*
                                                                                          *Fax: (312) 704-1522*

     2350700v.1

1

### E. Plaintiff's Voluntary Appeal.

2

On December 17, 2015, Plaintiff requested a copy of the claim file (AR 378-380), which

3

Principal Life provided on January 6, 2016. (AR 333).  On January 13, 2016, Plaintiff requested a

4

voluntary appeal. (AR 331) Plaintiff submitted an addendum report from Ms. Kemerer Jones on

5

February 3, 2016 along with case law allegedly supporting the proposition that Principal Life's

6

Labor Market Survey was required to be conducted in the local community he resided, which

7

Plaintiff alleged had not been done. (AR 316)  Principal Life requested a legal opinion relative to

8

same (AR 247-248) and received in-house and subsequently even outside counsel guidance on the

9

issue. (AR 238-239; AR 236-237).

10

Principal Life obtained updated median wage information for the Seattle-Tacoma-Bellevue

11

area for the occupations previously identified as being appropriate for Plaintiff based on his

12

physical limitations and education, training or experience and verified that every one of them was

13

Gainful. (AR 235)  Principal Life explained:

14

**FIRST-LINE SUPERVISOR OF TRANSPORATION AND MATERIAL MOVING MACHINE AND VEHICLE OPERATOR**
This occupation requires education level of high school or more and is classified under light strength. The physical requirements include frequent lifting/carrying less than 10 pounds, sitting, walking, talking, reaching downward, near acuity, and depth perception; occasional lifting/carrying up to 20 pounds, reaching, reaching upward, standing, handling, keyboard use, fingering, hearing, and accommodations. The annual mean wage for this occupation in the Seattle/Tacoma/Bellevue, Washington area is $69,810.00.

15

16

17

18

**TRANSPORTATION, STORAGE, AND DISTRIBUTION MANAGER**
This occupation requires equivalent to a four year college degree in a non-technical field and is classified under sedentary strength. The physical requirements include frequent lifting/carrying less than 10 pounds, sitting, talking, keyboard use, hearing, and near acuity; occasional lifting/carrying up to 20 pounds, reaching, standing, walking, fingering, far acuity, depth perception, accommodations, color vision, and field vision. The annual mean wage for this occupation in the Seattle/Tacoma/Bellevue, Washington area is $101,170.00.

19

20

21

22

23

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

24

2350700v.1

**REAL ESTATE BROKER**

This occupation requires equivalent to a four year college degree in a non-technical field and is classified under light strength. The physical requirements include frequent lifting/carrying less than 10 pounds, sitting, walking, talking, keyboard use, hearing, and near acuity; occasional lifting/carrying up to 20 pounds, reaching, standing, fingering, depth perception, and accommodations. The annual mean wage for this occupation in the Seattle/Tacoma/Bellevue, Washington area is $86,410.00.

**PROPERTY, REAL ESTATE, AND COMMUNITY ASSOCIATION MANAGER**

This occupation requires equivalent to one year trade school, technical school, or junior college and is classified under light strength. The physical requirements include frequent lifting/carrying less than 10 pounds, sitting, talking, keyboard use, hearing, and near acuity; occasional lifting/carrying up to 20 pounds, reaching, standing, walking, crouching, crawling, climbing, balancing, handling, feeling, fingering, far acuity, depth perception, accommodations, color vision, and field vision. The annual mean wage for this occupation in the Seattle/Tacoma/Bellevue, Washington area is $79,740.00.   (AR 227)

On April 7, 2016, Plaintiff filed the present lawsuit. [DE #1].

Plaintiff continues to work as a real estate broker for John L. Scott. https://scottp.johnlscott.com/ (last visited June 28, 2017.)  He received Emerald Awards in 2015 and 2016 from the Washington Multi-family Housing Association, https://www.linkedin.com/in/scott-paulson-94132943/ (last visited June 28, 2017).  Based on Zillow.com, he further sold a total of fourteen properties in the last 12 months, totaling $4,594,638 in real estate sales from July 2016 through June 2017 ($425,000 sold on 6/21/17; $325,000 on 5/31/17; $317,00 on 5/19/17, $300,000 on 5/1/17, $400,000 on 4/28/17, $210,000 sold 3/31/17, $390,000 sold 2/27/17, $375,000 sold 2/5/17, $220,000 on 1/25/17; $145,000 sold on 12/29/16; $319,719 sold 12/15/16, $640,000 sold 11/22/16, $292,919 sold 10/7/16 and $235,000 sold 7/15/16).  https://www.zillow.com/profile/Scott-R.-Paulson/ (last visited June 28, 2017). At 3% (AR 1686), his commission earnings for the last 12 months would be in excess of $137,000, making his chosen occupation clearly Gainful.

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE
52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 12
Case No. 3:16-cv-05268-RJB

2350700v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

## III.     LEGAL ARGUMENT

### A.     Standard Of Review

"The Supreme Court has held that a denial of benefits 'is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator [. . .] discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1023 (9th Cir. 2008) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the plan "does grant such discretionary authority, we review the administrator's decision for abuse of discretion." *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 866 (9th Cir. 2008).

In this case, the Group Policy, a plan document, provides as follows:

**Part II - POLICY ADMINISTRATION**

**Section A - Contract**
**Article 9 – Policy Interpretation**

The Principal has complete discretion to construe or interpret the provisions of this group insurance policy, to determine eligibility for benefits, and to determine the type and extent of benefits, if any, to be provided. The decisions of The Principal in such matters shall be as between The Principal and persons covered by this Group Policy, subject to the Claims Procedures in Part IV, Section Q of this Group Policy. (AR 23)

Additionally, the Booklet-Certificate provides:

We reserve complete discretion to construe or interpret the provisions of this group insurance, to determine eligibility for benefits, and to determine the type and extent of benefits, if any, to be provided. Our decisions in such matters will be controlling, binding, and final as between Us and persons covered by this group insurance, subject to the Claim Procedures shown in the Claim Procedures Section of this booklet. (AR 72)

There can be no question that these provisions unambiguously vest Principal Life with the discretion to determine benefit eligibility and to construe the terms of the group insurance issued.

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 13
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2350700v.1

The Ninth Circuit has held that in the ERISA context, "the test for abuse of discretion in a factual determination…is whether [the Court] is 'left with a definite and firm conviction that a mistake has been committed,' and [the Court] may not merely substitute [its] view for that of the fact finder." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 2011 U.S. App. LEXIS 4386 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) (en banc).) "To do so, [the Court] consider[s] whether application of a correct legal standard was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id*.  Here, there is nothing in the record evidence to suggest that Principal Life's determination was "illogical, implausible or without support" nor is there anything that could leave the court with the "firm conviction that a mistake has been made." *Id*.

Further, as recognized by the Ninth Circuit, even when a claims administrator's decision is contrary to some evidence in the administrative record, it does not mean that the denial of benefits was an abuse of discretion. *Taft v. Equitable Life Assur. Soc*, 9 F.3d 1469, 1473 (9th Cir. 1993). However, "[a]pplying a deferential standard of review does not mean that the plan administrator will prevail on the merits. It means only that the plan administrator's interpretation of the plan "'will not be disturbed if reasonable.'" *Conkright v. Frommert*, 130 S. Ct. 1640, 1651 (2010) (quoting *Firestone*, 489 U.S. at 111).

In an effort to streamline ERISA litigation, courts often utilize Rule 52 to permit the parties to submit evidence and allow the court to resolve factual disputes. *Caplan v. CNA Fin. Corp*., 544 F. Supp. 2d 984, 990 (N.D. Cal. 2008) (citing *Kearney,* 175 F.3d at 1094-95 (determining that a bench trial on the administrative record is the proper method of resolving a dispute over ERISA benefits.); *see also Hoskins v. Bayer Corporation,* 564 F. Supp. 2d 1097, 1099 n.1, 1103 (N.D. Cal. 2008) (treating parties' cross-motions for summary judgment as

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 14
Case No. 3:16-cv-05268-RJB

2350700v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

1    motions under Rule 52). Thus, instead of applying a summary judgment paradigm, the court here

2    can weigh the evidence presented and come to a conclusion resolving the principal factual

3    dispute as to whether Plaintiff satisfied his burden of proof of showing whether he meets the

4    Group Policy's definition of Disability.

5         The Group Policy underlying Plaintiff's claim is clear in that Plaintiff has to provide proof

6    of Disability to Principal Life, including appropriate and satisfactory documentation of his

7    disabling condition, as well as the extent of his disability, (AR 56), thereby placing the burden of

8    proof to establish benefit entitlement on Plaintiff.  *See also Jordan v. Northrop Grumman Corp.*

9    *Welfare Benefit Plan.*, 370 F.3d 869, 877 (9th Cir. 2004); *Seleine v. Fluor Corp. Long-Term*

10   *Disability Plan*, 598 F.Supp.2d 1090, 1099 (C.D. Cal. 2009); *see also Ruttenberg v. U.S. Life Ins.*

11   *Co.*, 413 F.3d 652, 663 (7th Cir. 2005) (citing *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461

     (7th Cir. 1997); *Fuja v. Benefit Trust Life Ins. Co.*, 18 F.3d 1405, 1408 (7th Cir. 1994)) (When a
12
     plaintiff "seeks to enforce benefits under" an ERISA policy, such plaintiff "therefore bears the
13
     burden of proving his [or her] entitlement to contract benefits.")
14
          Accordingly, under these principles, the task of this Court is to determine whether
15
     Principal Life's decision to terminate Plaintiff's long term disability benefits was reasonable, i.e.
16
     not illogical, implausible or without support.  It is anticipated that Plaintiff will argue that a *de*
17
     novo standard of review applies in this matter.  Under a *de* novo standard of review, the court is to
18
     independently determine whether Principal Life's decision to terminate Plaintiff's long term
19
     disability benefits was correct, without regard to Principal Life's assessment. The Court must bear
20
     in mind that Plaintiff has the burden of proving that he is entitled to the benefits in question.
21
          **B.     Plaintiff Has Retained Medium Functional Capacity.**
22
          As stated above, "the test for abuse of discretion in a factual determination…is whether
23
DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE
52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 15
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2350700v.1

1   [the Court] is 'left with a definite and firm conviction that a mistake has been committed,' and [the

2   Court] may not merely substitute [its] view for that of the fact finder." *Salomaa,* 2011 U.S. App.

3   LEXIS 4386.  In making its determination, the Court considers whether the claim decision was

4   "illogical, implausible, or without support in inferences that may be drawn from the facts in the

5   [administrative] record." *Id.*  And nothing in the record evidence in the case suggests that Principal

6   Life's determination was "illogical, implausible or without support." *Id.*  Under the Group Policy,

7   Principal Life is only obligated to provide long term disability benefits so long as Plaintiff provides

8   satisfactory written proof that he was "Disabled" as defined in the Group Policy.  Plaintiff was

9   required to provide satisfactory proof that due to his medical conditions, he experienced

10  restrictions and limitations so severe as to prevent him from performing the Substantial and

11  Material Duties of **any** Gainful Occupation. Courts have described the "any occupation" standard

12  as being not very demanding.  *See McKenzie v. General Tel. Co. of Cal.*, 41 F.3d 1310, 1317 (9th

13  Cir. 1994) (the "any occupation standard is not demanding"); *Brigham v. Sun Life of Can.*, 317

14  F.3d 73, 86 (1st Cir. 2003) (concluding that a paraplegic was not "totally disabled" and noting that

15  "the hurdle plaintiff had to surmount, establishing his inability to perform any occupation for

16  which he could be trained, was a high one"); *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1309 (5th Cir.

17  1994) ("[A]ny occupation standard not demanding even where insured was an older man (65

    years-old) with only a high school education").

18          Principal Life rightfully denied further benefits to Plaintiff because his medical records did

19  not support that he was unable to perform the majority of the Substantial and Material Duties of

20  any Gainful Occupation as of April 29, 2015. (AR 1711, 225-232)  More specifically, and

21  uncontested by Plaintiff during the administrative review of his claim, Plaintiff's medical records

22  during the relevant period contain a clear lack of support for the contention that Plaintiff lacked the

23  DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR
    JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE
    52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 16
    Case No. 3:16-cv-05268-RJB

24

    2350700v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

functional capacity of even a sedentary occupation.  To the contrary, his medical records show (and his treating physicians opined) that he was capable of medium, light and sedentary full time work.

Plaintiff's orthopedic surgeon Dr. Arntz opined that Plaintiff was capable of medium level activity (AR 1942-1943) but had permanent weight restrictions from lifting in excess of 50 lbs from the floor to waist level, from activities requiring any lifting above the mid chest to shoulder level in excess of 20 lbs and/or requiring repetitive use of the left shoulder and arm at or above the mid chest to shoulder level.  (*Id.*, AR 2340, 2336, 1893-94). Dr. Arntz indicated that Plaintiff's condition was stable and did not need any further treatment. (Id). In a telephone conference on February 27, 2015, Plaintiff revealed that he was no longer treating with Dr. Barrett, who had performed a knee replacement on Plaintiff, and that Plaintiff's knee was not disabling. (AR 197)

In light of this overwhelming evidence of residual medium, light and sedentary functional capacity – and a lack of contrary evidence or even argument -- Plaintiff cannot show that he would be unable to work in a sedentary[2], light[3] or medium[4] work setting with Dr. Arntz' restrictions.

---

[2] Sedentary work entails exerting up to 10 lbs of force occasionally and/or a negligent amount of force frequently to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking and standing are required only occasionally and all other sedentary criteria are met. 20 C.F.R. §404.1567(a).

[3] Light work entails exerting up to 20 lbs of force occasionally, and/or up to 10 lbs of force frequently, and/or negligible amount of force constantly to move objects.  Physical demand requirements are in excess of those for Sedentary Work.  Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. […] 20 C.F.R. §404.1567(b).

[4] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. 20 C.F.R. §404.1567(c).

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 17
Case No. 3:16-cv-05268-RJB

2350700v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

**C.      There Is At Least One Gainful Occupation Within Plaintiff's Functional Capacity As Well As His Training, Education And Experience.**

Having correctly determined that Plaintiff has retained the functionality to perform the material duties of a medium exertional level occupation (as well as sedentary and light work), Principal Life further correctly determined that there is at least one Gainful Occupation Plaintiff was reasonably fitted to perform based on his education, training or experience.

Principal Life requested several independent vocational assessments as well as wage and labor market sampling research during the review of Plaintiff's claim.  Specifically, after learning that Plaintiff had obtained his real estate broker license in 2010, Principal Life reviewed wage date for Plaintiff's new occupation and verified in April 2015 an annual median salary of $65,290. (AR 1713, 1686-1687). On September 15, 2015, Principal Life further requested an independent employability assessment and labor market survey relative to the occupation of a real estate agent. (AR 1651-1652) Vocational Consultant Mr. Thomas Ehlert, MS, CRC/R, with Adling & Associates provided his report on September 18, 2015, identifying a median salary of about $50,000, however, listing several employers in the Seattle area reporting income of $60,000 to over $100,000. (AR 1645-1648)  Principal Life forwarded the labor market survey to Plaintiff's counsel on September 25, 2015, explaining that it had been conducted with a view towards the occupation of real estate sales agent.  (AR 1630-1631)  Principal Life's correspondence informed Plaintiff further of the fact that his employer's website identified him as a real estate broker rather than a real estate sales agent and that the mean salary for a real estate broker was $80,420 in accordance with the US Bureau of Labor Statistics. (Id.) Updated U.S. Bureau of Labor Statistics confirm these findings for the Seattle-Bellevue-Tacoma area, identifying annual mean wages of $107,850 for brokers and $60,010 for Real Estate Sales Agents, both Gainful occupations as

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 18
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2350700v.1

defined in the Group Policy:

| 41-9021 | Real Estate Brokers | detail | 330 | 28.9% | 0.175 | 0.60 | $32.13 | $51.85 | **$107,850** | 16.7% |
| 41-9022 | Real Estate Sales Agents | detail | 5,080 | 7.2% | 2.710 | 2.51 | $23.42 | $28.85 | **$60,010** | 6.1% |

https://www.bls.gov/oes/current/oes_42660.htm (last visited June 28, 2017).

After receipt of Plaintiff's appeal, which solely focused on a characterization of Plaintiff's job rather than an assessment of his capability to perform Any Occupation, Principal Life further completed extensive vocational research relative to the occupations of Real Estate Broker, Transportation Manager, Truck Driver Supervisor and Property Manager. (AR 405) The research included occupational analyses, analyses of wage date based on the U.S. Bureau of Labor Statistics as well as identification of potential employers in the Seattle-Tacoma area. (Id., AR 406-705) The research resulted in the finding that all of the identified alternative occupations, including Real Estate Broker, were Gainful as defined by the Group Policy (i.e. had a median salary in excess of Plaintiff's scheduled monthly benefit, or $60,000 annually) considering wage data for the Seattle-Bellevue-Everett, WA area. (AR 406)

During its review of Plaintiff's voluntary appeal Principal Life obtained updated median wage information for the Seattle-Tacoma-Bellevue area for the four occupations previously identified as being appropriate for Plaintiff based on his physical limitations and education, training or experience and verified that every one of them was Gainful. (AR 235)  Principal Life explained:

**FIRST-LINE SUPERVISOR OF TRANSPORTATION AND MATERIAL MOVING MACHINE AND VEHICLE OPERATOR**
This occupation requires education level of high school or more and is classified under light strength. The physical requirements include frequent lifting/carrying less than 10 pounds, sitting, walking, talking, reaching downward, near acuity, and depth perception; occasional lifting/carrying up to 20 pounds, reaching, reaching upward, standing, handling, keyboard use, fingering, hearing, and accommodations. The

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 19
Case No. 3:16-cv-05268-RJB

2350700v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

annual mean wage for this occupation in the Seattle/Tacoma/Bellevue, Washington area is $69,810.00.

**TRANSPORTATION, STORAGE, AND DISTRIBUTION MANAGER**
This occupation requires equivalent to a four year college degree in a non-technical field and is classified under sedentary strength. The physical requirements include frequent lifting/carrying less than 10 pounds, sitting, talking, keyboard use, hearing, and near acuity; occasional lifting/carrying up to 20 pounds, reaching, standing, walking, fingering, far acuity, depth perception, accommodations, color vision, and field vision. The annual mean wage for this occupation in the Seattle/Tacoma/Bellevue, Washington area is $101,170.00.

**REAL ESTATE BROKER**
This occupation requires equivalent to a four year college degree in a non-technical field and is classified under light strength. The physical requirements include frequent lifting/carrying less than 10 pounds, sitting, walking, talking, keyboard use, hearing, and near acuity; occasional lifting/carrying up to 20 pounds, reaching, standing, fingering, depth perception, and accommodations. The annual mean wage for this occupation in the Seattle/Tacoma/Bellevue, Washington area is $86,410.00.

**PROPERTY, REAL ESTATE, AND COMMUNITY ASSOCIATION MANAGER**
This occupation requires equivalent to one year trade school, technical school, or junior college and is classified under light strength. The physical requirements include frequent lifting/carrying less than 10 pounds, sitting, talking, keyboard use, hearing, and near acuity; occasional lifting/carrying up to 20 pounds, reaching, standing, walking, crouching, crawling, climbing, balancing, handling, feeling, fingering, far acuity, depth perception, accommodations, color vision, and field vision. The annual mean wage for this occupation in the Seattle/Tacoma/Bellevue, Washington area is $79,740.00.   (AR 227)

Public data available relative to Plaintiff's work activities during the last twelve months demonstrate that Plaintiff has sold a total of 14 properties for a total of $4,594,638.00. https://www.zillow.com/profile/Scott-R.-Paulson/ (last visited June 28, 2017).   At 3% of 100% (AR 1686), his commission earnings for the last 12 months would be in excess of $137,000, making his chosen occupation clearly Gainful.  Even at 3% of 50%, his commission earnings for the last 12 months would be in excess of $60,000. ($68,919.57).  In light of the research in the claim file and Plaintiff actually working Gainfully, Principal Life's determination to terminate

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 20
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2350700v.1

Plaintiff's claim is clearly reasonable as well as correct.

### D.  Principal Life Considered the Appropriate Geographic Area..

While Plaintiff has alleged during the administrative review that Principal Life did not conduct the Labor Market Survey and other occupational research based on the appropriate community, Plaintiff's claim finds no traction in case law.  Indeed, as set out by Principal Life in its final denial letter, the Group Policy in this case focuses on the national economy (AR 38) rather than any regional community, and case law further supports that if a regional community or area is considered, which Principal Life did in this case, a 50 mile radius from where a claimant resides is appropriate. *Thomas v. Boston Mut. Life Ins. Co.*, 2:07-cv-47, 2008 U.S. Dist. LEXIS 23061 (W.D. Va. March 24, 2008); *see also Couzens v. Equitable Life Assur. Soc'y of the U.S.,* No. 98-527, 1998 U.S. Dist. LEXIS 15505 (E.D. Pa. Oct. 2, 1998).

As explained by Principal Life, "Seattle is 26.6 miles from Auburn and would be a 30 to 35 minute commute. Tacoma is 14.4 miles from Auburn and would be a 17-20 minute commute. The average commute for individuals residing in the Auburn area is about 25 to 30 minutes. Both Seattle and Tacoma would be part of the local economy where Mr. Paulson resides." (AR 226) Whether Plaintiff's work activities currently involve sales in Seattle is not relevant for the inquiry as the Group Policy focuses on the ***ability*** to perform Any Gainful Occupation – and does not base benefit entitlement on Plaintiff's actual activities.

There was nothing improper about Principal Life's labor market surveys and wage data considered.  For that reason also, Principal Life's determination should be upheld.

### E.  Plaintiff Cannot Meet His Burden of Proof By Relying on The Strategic Consulting Services' Assessment.

As part of his mandatory and voluntary appeals relative to the termination of his claim,

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE
52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 21
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2350700v.1

1   Plaintiff provided an employability assessment prepared by vocational consultant Anne Kemerer

2   Jones, M.Ed., CRC, D/ABVE. (AR 317-319) and an addendum regarding same. (AR 319-323)

3      Not only has counsel for Plaintiff retained Ms. Kemerer in other cases, *see e.g.* Case No.

4   3:15-cv-05899-BHS [e.g. DE #37], but Ms.  Kemerer's initial report also solely focused on a

5   classification of Plaintiff's actual work activities, arguing exclusively based on same that his

6   activities were not Gainful.  (AR 317-319)  His recent sales results as discussed above appear to

7   prove Ms. Kemerer's assessment incorrect. But irrespective of the falseness of her analysis, the

8   focus of her report also fails to satisfy Plaintiff's burden: ***inability*** to perform the material and

9   substantial duties of Any Gainful Occupation – whether Plaintiff is working or not and how

10  successfully is arguably irrelevant as "[a]s harsh as it may seem, the policy requires UNUM only

11  to show that the insured is **capable** of performing any gainful occupation anywhere in the national

12  economy.  *See*, *e.g.*, *Couzens*, 1998 U.S. Dist. LEXIS 15505 ("Total disability does not mean that

13  Plaintiff cannot find a job, but rather that Plaintiff is unable to perform any gainful occupation.");

14  *Block v. Pitney Bowes Inc.,* 293 U.S. App. D.C. 256, 952 F.2d 1450, 1455 (D.C. Cir. 1992) (Ruth

15  Bader Ginsberg, J.) ("No provision required Pitney Bowes, as a condition of terminating Block's

16  compensation, to 'ensure the availability of an alternative job.'"); *Heller v. Fortis Benefits Ins. Co.*,

17  330 U.S. App. D.C. 39, 142 F.3d 487, 493 (D.C. Cir. 1998)." *Das v. Unum Life Ins. Co. of Am.*,

18  2005 U.S. Dist. LEXIS 5461 (E.D. Pa. March 31, 2005), *aff'd Das v. UNUM Life Ins. Co. of Am.*,

19  2007 U.S. App. LEXIS 6065 (3d Cir. Pa., Mar. 13, 2007).  Given the evidence before the Court

20  there can be no question that Plaintiff can perform the material and substantial duties of a Gainful

21  Occupation  and  that  several  Gainful  Occupations  exist  within  his  physical  limitations  and

22  restrictions as well as within his education, training or experience.

       Additionally, the Group Policy defines Gainful Occupation as Employment in which the

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE
52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 22
Case No. 3:16-cv-05268-RJB

2350700v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

1    Member could **reasonably be expected** to earn an amount equal or greater than the Primary

2    Monthly Benefit. (AR 13) The Seventh Circuit in *Donna Geiger v. Aetna Life Ins. Co.*, 845 F.3d

3    357 (7th Cir. 2017) addressed this specific language just a few months ago and found it to

4    contemplate that an employee's income would increase as he or she gains experience:

> Second, Geiger asserts that Ms. Clifton's TSA did not consider the differing medical opinions and identified jobs that were inconsistent with Geiger's education, training and experience. The TSA found at least two sedentary jobs, including Job Development Specialist and Commission Agent, consistent with Geiger's skills and functional abilities and exceeded her wage criteria of $30.16 per hour. The Plan defines "reasonable occupation" as "any gainful occupation for which you are, *or may reasonably become*, fitted by: education; training; or experience; and which results in; *or can be expected to result in*; an income of more than 60% of your adjusted predisability earnings." (emphasis added).
>
> Geiger argues that the occupational assessment improperly identified two qualifying occupations because she only had experience as an account manager at Sprint. However, the italicized language in the previous paragraph requires only that one "may reasonably become" fitted by education, training, or experience. Geiger also argues that as an employee with no prior experience as a job development specialist or commission agent she would likely earn less than the median income identified for those jobs. Again, the italicized language, "can be expected to result in," appears to contemplate that an employee's income would increase as he or she gains experience. […]

*Id.* at *363.

Given the Group Policy language in this case, as long as Plaintiff, based on an increase in

experience, can **reasonably be expected** to eventually earn an income of at least $5,000.00 per

month, less than the mean salaries identified (AR 775), Plaintiff is not qualified to receive further

benefits under the Group Policy. His current sales numbers (as compared to his numbers in 2010

through 2015) underscore this assessment.

Ms. Kemerer's addendum report also focuses on Plaintiff's current work activities,

ignoring that the Group Policy sets out that benefit eligibility requires the inability to perform the

majority of the Substantial and Material Duties of any Gainful Occupation for which he or she is or

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 23
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2350700v.1

*may reasonably become qualified* based on education, training or experience. (AR 13)  There is no reason that Plaintiff would not be able to obtain his Managing Broker License and become reasonably qualified based on his education, training or experience, for the occupation of Managing Broker. Ms. Kemerer explained the requirements in her addendum report and it appears that Plaintiff has the necessary experience given that he has 7 years of real estate broker experience and would only need to complete the educational requirements and sit for the examination.  (AR 320)  Clearly, he may reasonably become qualified for this occupation as required by the Group Policy.

Moreover, however, while Ms. Kemerer contends that the median wage data for the Tacoma area for a real estate agent is $32,677 and the 50% percentile wage in the Seattle area $37,835 per the U.S. Bureau of Labor Statistics. (AR 320), a quick look at the U.S. Bureau of Labor Statistics for Real Estate Agents, 41-9022, contradicts these findings in that for the Seattle - Bellevue-Tacoma area, the mean wage is $60,010, and if solely looking at Seattle, it is $62,250. *See supra.* Plaintiff's sales for the last 12 months further support that his occupation is certainly Gainful.

Ms. Kemerer's report is also flawed in that she reaches the wholesale conclusion that the alternative occupation of First-Line Supervisor of Transportation and Material Moving Machine and Vehicle Operator is outside of Plaintiff's capabilities but does not explain why. (AR 322) Unsupported conclusions do not suffice to meet Plaintiff's burden of proof. *See Jordan, supra.* The occupation is sedentary to light duty as performed in the labor market and of a supervisory nature and, therefore, clearly within Plaintiff's physical restrictions.  (AR 227)

These inconsistencies alone support Principal Life's contrary determination and make clear that Ms. Kemerer's assessment is lacking.

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE
52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 24
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2350700v.1

IV.    **CONCLUSION**

For all of the reasons discussed above, Principal Life respectfully request that the District Court grant Principal Life's Motion for Judgment, affirming its determination to terminate Plaintiff's disability benefits and entering judgment in Principal Life's favor.

DATED this 30th day of July, 2017

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP

By: */s/ Edna S. Kersting*
   Edna S. Kersting, Illinois #6277775
   *(pro hac vice)*
   55 West Monroe Street, Suite 3800
   Chicago, IL 60603
   Tel: 312-821-6162
   Fax: 312-740-1522
   Email: edna.kersting@wilsonelser.com

INSLEE, BEST, DOEZIE & RYDER, P.S.

By: */s/ Dan S. Lossing*
   Dan S. Lossing, WSBA #13570
   Attorneys for Defendant Principal Life
   Insurance Company

   10900 N.E. 4th Street, Suite 1500
   Bellevue, WA  98004
   Tel: 425-455-1234
   Fax: 425-635-7720
   Email: dlossing@insleebest.com

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 25
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2350700v.1

1

## <u>CERTIFICATE OF SERVICE</u>

2

      I hereby certify that on June 30, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

3

4

      Dated this 30th day of June, 2017

5

                  */s/ Edna S. Kersting*
                    Edna S. Kersting, Illinois #6277775

6

                    *(pro hac vice)*
                    55 West Monroe Street, Suite 3800

7

                    Chicago, IL 60603
                    Tel: 312-821-6162

8

                    Fax: 312-740-1522
                    Email: edna.kersting@wilsonelser.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD PURSUANT TO RULE
52 OF THE FEDERAL RULES OF CIVIL PROCEDURE - PAGE 26
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

24

2350700v.1