1
2
3
4
5

Hon. Robert J. Bryan

6

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

7

8

SCOTT R. PAULSON,

                Plaintiff,

9

vs.

10

PRINCIPAL LIFE INSURANCE COMPANY,

11

                Defendant.

12

13

14

Case No. 3:16-cv-05268-RJB

**DEFENDANT PRINCIPAL LIFE
INSURANCE COMPANY'S RESPONSE
TO PLAINTIFF'S MOTION FOR
JUDGMENT ON THE
ADMINISTRATIVE RECORD
PURSUANT TO RULE 52 OF THE
FEDERAL RULES OF CIVIL
PROCEDURE**

**TRIAL DATE: August 8, 2017 at 9:30 am**

15

**I.**    **INTRODUCTION**

16

      The evidence in the administrative record before this Court establishes that Plaintiff Scott

17

Paulson ("Plaintiff") has the physical capacity as well as the training, education or experience to

18

work full-time in several Gainful Occupations.  Moreover, belying all of his assertions, the evidence

19

establishes that he is indeed working Gainfully.  Nonetheless, Plaintiff seeks continued long term

20

disability benefits under an employee welfare benefit plan ("Plan"), afforded by his former employer

21

McLane Company, Inc. ("McLane").  The long term disability benefits at issue are funded by Group

22

Policy No. GLT H25974 ("Group Policy") issued by Principal Life Insurance Company ("Principal

23

24

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE
RECORD - PAGE 1
Case No. 3:16-cv-05268-RJB

2356676v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

Life" or "Defendant"), who also serves as the Plan's claims review fiduciary relative to claims for long term disability benefits. There is no dispute that the Group Policy and Plaintiff's claim for benefits are governed by and subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA").

Plaintiff concedes in his brief that the Group Policy, which was issued and delivered in Texas and has a choice of law provision, contains an express discretionary clause, conveying discretionary authority upon Principal Life to determine benefit eligibility and interpret the terms of the Group Policy, but argues that given Washington State's ban of discretionary clauses, a *de novo* standard of review applies to this matter. Nonetheless, his brief argues that Principal Life's determination was ***arbitrary and capricious*** rather than focusing on satisfying his burden of proving entitlement to benefits by a preponderance of evidence based on the administrative record as necessary to prevail under the ***de novo*** standard of review he would have the court apply. Similarly, contrary to the notion that this Court is to review the evidence *de novo*, he wastes pages on Principal Life's claim review – particularly with the boiler plate argument that there was a lack of "dialogue" without actually demonstrating based on the record what Principal Life did not communicate to him. As the record is replete with phone records and correspondence between Principal Life and Plaintiff, this argument lacks all merit. Similarly baseless is Plaintiff's attempt to find fault with Principal Life's claim review on the basis that Principal Life was able to identify additional suitable Gainful occupations during its review of Plaintiff's appeal. As Plaintiff was given the opportunity – and indeed pursued – an additional level of appeal providing him with an opportunity to respond to the additional occupations identified, Plaintiff's criticism misses the mark.

The most glaring flaw in Plaintiff's arguments; however, is that in his motion – just as previously during his appeal of Principal Life's termination of his claim -- Plaintiff argues that he is

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE
RECORD - PAGE 2
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2356676v.1

entitled to continued benefits because Principal Life in identifying Gainful Occupations used the wrong "title" for the occupation he was actually performing.  Plaintiff's argument misapprehends the nature of the long term disability coverage at issue, which does not insure against the occupational choices made by a claimant and the purported lack of Gainfulness of a chosen occupation, but rather against the *inability* to work Gainfully. The record is clear in that Plaintiff is certainly not unable to work Gainfully and there are several Gainful occupations for which he is or can become qualified based on his training, education or experience.

What makes Plaintiff's claim especially disingenuous is the fact that Plaintiff – title confusion or not -- is indeed working Gainfully in his chosen occupation as a Real Estate Broker as evidenced by his sales set out on Zillow.com, which exceeded $4.5 Million in the last 12 months, providing him with more than $60,000.00 in income annually.  Indeed, since Principal Life filed its opening brief and accessed the sales information on Zillow.com, two additional sales have been recorded on June 26, 2017 and June 27, 2017 in a total amount of $717,000.00. https://www.zillow.com/profile/Scott-R.-Paulson/ (last visited July 12, 2017).  ***Thus, in June 2017 alone – while arguing to the court that he is entitled to disability benefits -- Plaintiff sold $1,142,000 in real estate, amounting to a commission of $34,260.00, assuming a conservative 3% in commissions.***

For the reasons set out in Principal Life's opening brief, which is fully incorporated herein, as well as in this responsive brief, Principal Life's decision to terminate Plaintiff's benefits should be affirmed because the record before this Court unequivocally demonstrates that there are Gainful Occupations within Plaintiff's physical restrictions and that Plaintiff is qualified for and can become qualified for based on his education, training and experience.

Therefore, Plaintiff failed to meet (and can never meet) the Group Policy's definition of

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE
RECORD - PAGE 3
Case No. 3:16-cv-05268-RJB

2356676v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

1   Disability for the period in question and judgment should be entered in Principal Life's favor, under

2   either standard of review.

3   **II.     RESPONSE TO PLAINTIFF'S "FACTS"**

4            In response to Plaintiff's facts as set out in his brief, comingled with his arguments, (Plf.

5   Brief at pp. 2-20), Principal Life points this Court to its opening brief, which contains a detailed

6   factual description as well as to the complete administrative record ("AR") generated during the

7   review of Plaintiff's claim, bates labeled AR 1 through AR 2553, filed with the court [DE #21].[1]

8   Throughout Principal Life's briefs, as well as in the following summary of the most relevant facts

9   relative to the vocational component of Plaintiff's claim only, the administrative record is referenced

10  by citation to the relevant pages as ("AR _____")

11           After Plaintiff left his regular occupation as a truck driver on December 5, 2008 (AR 2349,

12  2354, 2336, 2309-2313), Plaintiff applied for long term disability benefits with Principal Life on

13  October 19, 2009. (AR 2353-2357, 2341)  On April 26, 2010, Principal Life approved Plaintiff's

14  claim effective April 22, 2010 and informed Plaintiff of the change in definition on April 21, 2011,

15  requiring an inability to work at any Gainful Occupation going forward.  (AR 2157-2162)

16           On June 8, 2010, Principal Life discussed working as a real estate agent with Plaintiff and

17  Plaintiff provided information relative to fees and commission rates, starting out at 3% of 50% of a

18  sale until a threshold was met, at which point commissions increased to 3% of 100% of the sale. (AR

19  1686)

20       **A.  Plaintiff's 2010 Real Estate Broker License and Subsequent Employment.**

21           On September 28, 2010, Principal Life learned that Plaintiff had obtained his real estate

22          [1] Principal Life will provide this Court with a courtesy copy for its convenience along with
     copies of its briefs prior to the trial date.

23  DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO          *Wilson Elser Moskowitz Edelman & Dicker LLP*
    PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE             *55 West Monroe Street, Suite 3800*
    RECORD - PAGE 4                                                    *Chicago, Illinois 60603*
24  Case No. 3:16-cv-05268-RJB                                         *Tel.: (312) 821-6162*
                                                                       *Fax: (312) 704-1522*

    2356676v.1

broker license in June 2010 and was working 20 to 40 hours per week but had had no sales so far[2]. (AR 2060) On June 9, 2011, Principal Life noted that Plaintiff was employed by John L. Scott Real Estate in Bonney Lake, WA. (AR 1987)  Throughout 2013, 2014 and 2015, Plaintiff continued to work as a real estate broker and submitted information relative to commissions received on a monthly basis. (AR 1938-1917, 1900-1901, 1838-1848, 1823-1824, 1807-1808)

On April 29, 2015, Vocational Rehabilitation Specialist Sheila Thompson was consulted as part of a vocational consult on Plaintiff's claim and Ms. Thompson provided the opinion based on her experience and research that the median salary for a real estate agent was $65,290.00. (AR 199) On May 7, 2015, based on Ms. Thompson's vocational assessment, which was able to identify an annual median salary for real estate agents of $65,290, making it a Gainful Occupation as defined in the Group Policy, Principal Life terminated Plaintiff's claim for benefits beyond April 29, 2015. (AR 1713, 1686-1687)

**B.  2015 Adling & Associates Employability Assessment**

On September 15, 2015, Principal Life referred Plaintiff's claim to Adling & Associates for an independent employability assessment and labor market survey relative to the occupation of a real estate agent. (AR 1651-1652) Vocational Consultant Mr. Thomas Ehlert, MS, CRC/R, provided his report on September 18, 2015, identifying a median salary of about $50,000; however, he also listed several employers in the Seattle area reporting income of $60,000 to over $100,000.  (AR 1645-1648)  Moreover, Plaintiff's employer's website identified him as a real estate broker rather than a

---

[2] The Washington State Department of Licensing indicates that Plaintiff obtained his Real Estate Broker license on June 24, 2010, working in Bonney Lake, WA, and his license remains active.

 https://fortress.wa.gov/dol/dolprod/bpdLicenseQuery/lqsLicenseDetail.aspx?RefID=440277  (last visited on June 26, 2017); *see also*  http://www.scottp.johnlscott.com/?p=resume.asp&sortOrder=1 (last visited June 26, 2017).

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE
RECORD - PAGE 5
Case No. 3:16-cv-05268-RJB

2356676v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

real estate sales agent and the mean salary for a real estate broker was $80,420.00 in accordance with the US Bureau of Labor Statistics. (Id.) *Compare updated statistics at https://www.bls.gov/oes/current/naics4_531200.htm (last visited June 27, 2017).*

| Occupation code | Occupation title | Group | Employment | Employment RSE | Percent of total employment | Median hourly wage | Mean hourly wage | Annual mean wage | Mean wage RSE |
|---|---|---|---|---|---|---|---|---|---|
| 41-9020 | Real Estate Brokers and Sales Agents | broad | 86,850 | 2.1% | 28.90% | $22.90 | $32.00 | **$66,570** | 2.1% |
| 41-9021 | Real Estate Brokers | detail | 23,410 | 4.1% | 7.79% | $28.36 | $39.82 | **$82,820** | 4.1% |
| 41-9022 | Real Estate Sales Agents | detail | 63,440 | 2.7% | 21.11% | $21.23 | $29.12 | **$60,570** | 2.3% |

**C. Plaintiff's Request for Reconsideration, Updated Record Check on Plaintiff and Vocational Research.**

On October 26, 2015 Plaintiff requested a reconsideration of the termination of his claim. (AR 1622-1628)  Along with his appeal, Plaintiff submitted a report prepared by Anne Kemerer Jones, M.Ed., CRC, of Strategic Consulting Services, Inc., opining as to the character of Plaintiff's job with John L. Scott Real Estate only and providing no additional opinions.  (AR 1186-1187)

An updated record check on Plaintiff completed on November 16, 2015 revealed his profile on realtor.com, which stated that he had 5 years of experience selling real estate and that he specialized in Buyers, First Time Homes Buyers, Sellers, Foreclosures, Investors, Relocate, Reo's and Short Sales. (AR 707)  The areas served were listed as Auburn, Federal Way, Kent, Orting, Pacific, Puyallup, Renton, Sumner and Tacoma and his price range was listed as $130,000.00 through $353,000.00[3]. (Id.)  Principal Life further completed extensive vocational research relative to the occupations of Real Estate Broker as well as Transportation Manager, Truck Driver Supervisor

---

[3] Based on Plaintiff's sales figure during the last 12 months it seems that his range has increased into the $400,000's.  https://www.zillow.com/profile/Scott-R.-Paulson/.

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD - PAGE 6
Case No. 3:16-cv-05268-RJB

2356676v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

and Property Manager. (AR 405)  The research included obtaining occupational analyses and wage data based on the U.S. Bureau of Labor Statistics, as well as identifying potential employers in the Seattle-Tacoma area. (Id., AR 406-705) The research found that all of the identified alternative occupations, including Real Estate Broker, were Gainful as defined by the Group Policy (i.e., had a median salary in excess of Plaintiff's scheduled monthly benefit, or $60,000 annually) and Principal Life specifically considered wage data for the Seattle-Bellevue-Everett, Washington, area. (AR 406)

Given the results of its research, Principal Life upheld its termination of Plaintiff's claim in correspondence dated December 16, 2015. (AR 392-395)  Along with explaining that Plaintiff could work as a Real Estate Broker and was licensed to do so – and was actually working as a Real Estate Broker -- which was a Gainful Occupation, Principal Life explained that Plaintiff was also physically able to and qualified based on education, training or experience to perform the Gainful Occupations of:

> First-Line Supervisor of Transportation and Material-Moving Machine and Vehicle Operator, BLS Median Salary $66,980.00: Responsible for directly supervising and coordinating activities of transportation and material-moving machine and vehicle operators and helpers;
>
> Transportation, Storage, and Distribution Manager, BLS Median Salary $101,220.00: Responsibilities include planning, directing, or coordinating transportation, storage, or distribution activities in accordance with organizational policies and applicable government laws or regulations. Includes logistics managers.
>
> Property, Real Estate, and Community Association Manager, BLS Median Salary $67,700.00: Responsible for planning, directing, or coordinating the selling, buying, leasing, or governance activities of commercial, industrial, or residential real estate properties. Includes managers of homeowner and condominium associations, rented or leased housing units, buildings, or land (including rights-of-way). (AR 385)

**D.  Plaintiff's Voluntary Appeal and Principal Life's Further Vocational Research.**

On January 13, 2016, Plaintiff submitted a voluntary appeal.  (AR 331)  In evaluating Plaintiff's appeal, Principal Life obtained updated median wage information for the Seattle-Tacoma-

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE
RECORD - PAGE 7
Case No. 3:16-cv-05268-RJB

2356676v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

Bellevue area for the occupations previously identified as being appropriate for Plaintiff based on his physical limitations and education, training or experience and verified that every one of them was Gainful. (AR 235)  Principal Life explained:

> **FIRST-LINE SUPERVISOR OF TRANSPORTATION AND MATERIAL MOVING MACHINE AND VEHICLE OPERATOR**
> This occupation requires education level of high school or more and is classified under light strength. The physical requirements include frequent lifting/carrying less than 10 pounds, sitting, walking, talking, reaching downward, near acuity, and depth perception; occasional lifting/carrying up to 20 pounds, reaching, reaching upward, standing, handling, keyboard use, fingering, hearing, and accommodations. The annual mean wage for this occupation in the Seattle/Tacoma/Bellevue, Washington area is $69,810.00.
>
> **TRANSPORTATION, STORAGE, AND DISTRIBUTION MANAGER**
> This occupation requires equivalent to a four year college degree in a non-technical field and is classified under sedentary strength. The physical requirements include frequent lifting/carrying less than 10 pounds, sitting, talking, keyboard use, hearing, and near acuity; occasional lifting/carrying up to 20 pounds, reaching, standing, walking, fingering, far acuity, depth perception, accommodations, color vision, and field vision. The annual mean wage for this occupation in the Seattle/Tacoma/Bellevue, Washington area is $101,170.00.
>
> **REAL ESTATE BROKER**
> This occupation requires equivalent to a four year college degree in a non-technical field and is classified under light strength. The physical requirements include frequent lifting/carrying less than 10 pounds, sitting, walking, talking, keyboard use, hearing, and near acuity; occasional lifting/carrying up to 20 pounds, reaching, standing, fingering, depth perception, and accommodations. The annual mean wage for this occupation in the Seattle/Tacoma/Bellevue, Washington area is $86,410.00.
>
> **PROPERTY, REAL ESTATE, AND COMMUNITY ASSOCIATION MANAGER**
> This occupation requires equivalent to one year trade school, technical school, or junior college and is classified under light strength. The physical requirements include frequent lifting/carrying less than 10 pounds, sitting, talking, keyboard use, hearing, and near acuity; occasional lifting/carrying up to 20 pounds, reaching, standing, walking, crouching, crawling, climbing, balancing, handling, feeling, fingering, far acuity, depth perception, accommodations, color vision, and field vision. The annual mean wage for this occupation in the Seattle/Tacoma/Bellevue, Washington area is $79,740.00.

(AR 227)

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD - PAGE 8
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2356676v.1

1

**E.  Plaintiff's Recent Work Activities.**

2

Plaintiff continues to work as a real estate broker for John L. Scott.

3

https://scottp.johnlscott.com/ (last visited June 28, 2017.)  He received Emerald Awards in 2015 and

4

2016 from the Washington Multi-family Housing Association, https://www.linkedin.com/in/scott-

5

paulson-94132943/ (last visited June 28, 2017).   Based on Zillow.com, he further sold a total of

6

sixteen  properties in the last 12 months, totaling $5,311,638 in real estate sales from July 2016

7

through June 2017 ($407,000 sold on 6/27/17; $310,000 sold on 6/26/17; $425,000 sold on 6/21/17;

8

$325,000 on 5/31/17; $317,000 on 5/19/17; $300,000 on 5/1/17; $400,000 on 4/28/17; $210,000

9

sold 3/31/17; $390,000 sold 2/27/17; $375,000 sold 2/5/17; $220,000 on 1/25/17; $145,000 sold on

10

12/29/16; $319,719 sold 12/15/16; $640,000 sold 11/22/16; $292,919 sold 10/7/16; and $235,000

11

sold 7/15/16).  https://www.zillow.com/profile/Scott-R.-Paulson/ (last visited June 28, 2017). At 3%

12

(AR 1686), his commission earnings for the last 12 months would be in excess of $159,000, making

13

his chosen occupation clearly Gainful – and indeed better paid than his prior occupation as a Truck

Driver. (AR 2157)

14

III.     **LEGAL ARGUMENT**

15

**A.  ERISA Standard of Review**

16

On the basis of *Flaaen v. Principal Life Ins. Co.*, No. C15-5899BHS, 2016 U.S. Dist. LEXIS

17

177638 (W.D. Wash. Dec. 22, 2016), which is not binding on this Court, Plaintiff challenges

18

Principal Life's position that an arbitrary and capricious standard of review is applicable to this

19

Court's review contrary to the clear Group Policy language, which states:

20

21

22

23

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE
RECORD - PAGE 9
Case No. 3:16-cv-05268-RJB

2356676v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

24

**Part II - POLICY ADMINISTRATION**

**Section A - Contract**
**Article 9 – Policy Interpretation**

The Principal has complete discretion to construe or interpret the provisions of this group insurance policy, to determine eligibility for benefits, and to determine the type and extent of benefits, if any, to be provided. The decisions of The Principal in such matters shall be as between The Principal and persons covered by this Group Policy, subject to the Claims Procedures in Part IV, Section Q of this Group Policy.  (AR 23)

Additionally, the Booklet-Certificate provides:

We reserve complete discretion to construe or interpret the provisions of this group insurance, to determine eligibility for benefits, and to determine the type and extent of benefits, if any, to be provided.  Our decisions in such matters will be controlling, binding, and final as between Us and persons covered by this group insurance, subject to the Claim Procedures shown in the Claim Procedures Section of this booklet.  (AR 72)

The Group Policy was issued and delivered and paid for in Texas and is subject to Texas law by its own provisions. (AR 5, 72, 119-123)  It has been settled law in the Ninth Circuit that in determining the applicable standard of review, a choice of law provision in an ERISA plan should be followed unless unreasonable or fundamentally unfair. *See Fenberg v. Cowden Auto. Long Term Disability Plan*, Nos. 05-17192, 06-15132, 259 Fed. Appx. 958, 2007 U.S. App. LEXIS 29438, *1 (9th Cir. Dec. 17, 2007); *Gonda v. The Permanente Medical Group, Inc.*, No. 11-cv-01363-SC, 2015 U.S. Dist. LEXIS 18892 (N.D. Cal. Feb. 17, 2015) (acknowledging that *Fenberg* had broadened the application of *Wang* [*Lab v. Kagan*, 990 F.2d 1126 (9th Cir. 1993)] to determinations of the applicable standard of review in ERISA benefits cases, *id.* at *21, FN. 2); *Doe v. PriceWaterHouseCoopers Health & Welfare Plan*, No. C 13-02710 JSW, 2014 U.S. Dist. LEXIS 81071 (N.D. Cal. June 11, 2014) (upholding choice of law provision in ERISA plan.)

In *Fenberg*, the insurance policy contained a provision stating that it was governed by Rhode Island law and the plaintiff had not made an adequate showing that "viewed from the time when the

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD - PAGE 10
Case No. 3:16-cv-05268-RJB

2356676v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

contract was made, when a particular individual could not have known whether he would be a litigant, the parties' choice of Rhode Island law was 'unreasonable or fundamentally unfair,'" *see Wang Lab. v. Kagan*, 990 F.2d 1126, 1128-29 (9th Cir. 1993) (holding that "[w]here a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair"). As such, the court determined that the discretionary clause in the policy was not barred by the California insurance code.  *See also Gordon v. Doe*, No. 10-35030, 459 Fed. Appx. 681 (9th Cir. Nov. 28, 2011) (federal courts apply law of state identified in contract); *Jimenez v. Sun Life Assur. Co. of Can.*, No. 11-30872, 486 Fed. Appx. 398, 406 (5th Cir. 2012) (rejecting argument that Louisiana insurance law precluded policy exclusion used to deny benefits because policy contained a Texas choice of law provision); *Greenberg v. Aetna Life Ins. Co.,* No. 10-2083-cv, 421 Fed. Appx. 124, 125 (2d Cir. May 11, 2011) (upholding policy's Pennsylvania choice of law provision.); *Young v. Verizon's Bell Atl. Cash Balance Plan,* 615 F.3d 808, 816 (7th Cir. 2010) (relying on choice of law provision in ERISA plan in deciding which state's statute of limitations to apply); *Capone v. Aetna Life Ins. Co.,* 592 F.3d 1189 (11th Cir. 2010) (holding that "where a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair."); 5-15 The Law of Life and Health Insurance § 15.02 (2014) ("It seems to be generally accepted that a choice of law provision in an ERISA policy will be given effect as long as it is not unreasonable or unfair.").

In *Doe*, the Northern District of California was faced with the exact question as is this Court here and found that a plaintiff could not pick and choose which provisions of the plan he or she would like to be upheld as valid and which provisions may be struck. *Doe*, *supra,* at *6-8. As such, as the instrument underlying the claim for benefits, all provisions of the plan were enforceable, including the choice of law provision, which the plaintiff did not demonstrate was unreasonable or fundamentally unfair. *Id.* at *7-8. The court held that the California Insurance Code did not apply to

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD - PAGE 11
Case No. 3:16-cv-05268-RJB

2356676v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

the policy at issue and the arbitrary and capricious standard of review applied to the court's review. *Id.*

The present case is inherently similar. The Group Policy on which Plaintiff relies for his entitlement to benefits contains a choice of law provision, stating that the Group Policy is governed by and subject to Texas law. (AR 72) As the *Doe* court pointed out, the court may not selectively strike certain provisions and enforce others; thus, the choice of law provision applies unless Plaintiff is able to show that "viewed from the time when the contract was made, when a particular individual could not have known whether he would be a litigant, the parties' choice of Texas law was 'unreasonable or fundamentally unfair.'" *Wang, supra.* This Plaintiff cannot and will never be able to meet that test as the Group Policy – *to which he is not a party* -- was applied for by, negotiated with and issued to McLane, a Texas company, in Texas. (AR 119-123)  It was delivered in Texas and billed in Texas and the premiums were paid from Texas. (Id.)  Moreover, unlike in *Fenberg*, the majority of participants in McLane's plan are not Washington state residents -- only approximately 425 teammates of 14,200 covered employees work out of McLane's Northwest division, which services Washington, Oregon and Idaho.[4]  The principles of uniformity, predictability and fairness inherent to ERISA require uniform application of law—Texas law--to the Group Policy and uniform judicial adjudication of claims. *Conkright v. Frommert,* 559 U.S. 505 (2010).

For all of these reasons, applying the laws of the State of Texas to the Group Policy is neither unreasonable nor fundamentally unfair, but instead is required by settled Ninth Circuit law and principles of uniformity, predictability and fairness inherent to ERISA. An arbitrary and capricious standard of review should guide this Court's review of Principal Life's determination.

---

[4]  https://www.mclaneco.com/content/mclane/en/solutions/grocery-supply-chain-solutions/locations/mclane-northwest.html (last visited on July 22, 2016.)

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE
RECORD - PAGE 12
Case No. 3:16-cv-05268-RJB

2356676v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

Additionally, irrespective of the choice of law provision contained in the group contract, it is settled insurance law that the law of the state of issuance of an insurance contract governs any disputes under the contract. *See Home Ins. Co. v. Dick*, 281 U.S. 397 (1930); *John Hancock Mutual Life Ins. Co. v. Yates*, 299 U.S. 178 (1936), where the Supreme Court found non-significant forum contact when the insurance policies to be interpreted had been issued and delivered in a state/country other than the forum state.

California's provision banning discretionary clauses, e.g., expressly applies to any insurance contracts, no matter where they were issued, delivered or renewed, providing coverage to a California resident[5], Washington's ban, WAC §284-96-012, does not contain language to that effect. Indeed, the comments related to the proposal of the Washington provision make clear that it was intended to only apply to insurance contracts offered in Washington, http://lawfilesext.leg.wa.gov/law/wsr/2009/07/09-07-030.htm, which the one at issue is not. IN addition, Washington law also otherwise clarifies that it only applies to disability group insurance policies which are subject to approval by the Washington state insurance commissioner. RCW

---

[5] Section 10110.6 of the California Insurance Code reads as follows:

(a) If a policy, contract, certificate, or agreement offered, issued, delivered, or renewed, whether or not in California, that provides or funds life insurance or disability insurance coverage for any California resident contains a provision that reserves discretionary authority to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage, to interpret the terms of the policy, contract, certificate, or agreement, or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is void and unenforceable.

(b) For purposes of this section, "renewed" means continued in force on or after the policy's anniversary date.

[…] Cal. Ins. Code § 10110.6 (2014).

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD - PAGE 13
Case No. 3:16-cv-05268-RJB

2356676v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

1   §48.18.120; RCW §48.21.010(2)(b) (acknowledging that the Washington Insurance Commissioner

2   has no regulatory authority about insurance policies issued and delivered in other states.)

3          For all of these reasons, Principal Life respectfully submits that this Court should review the

4   termination of Plaintiff's claim under an arbitrary and capricious standard of review.  *See also* ([DE#

5   26] Plaintiff's brief at p. 6.)

6          To the extent that this Court finds that a *de novo* standard of review applies here, Principal

7   Life's claim review no longer is at issue but instead the Court is to focus on the ultimate question: is

8   plaintiff entitled to additional benefits under the Group Policy?  In accordance with *Kearney v.*

9   *Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999), this Court has set this matter for a bench

10  trial.  As explained in *Morgan v. Hartford Life & Accident Ins. Co.*, No. C16-5183 BHS, 2017 U.S.

11  Dist. LEXIS 52521 (W.D. Wash. April 5, 2017), "[i]n *Kearney*, the Ninth Circuit 'created a 'novel

12  form of trial,' in which the district court, subject to its discretion to consider additional evidence

13  under limited circumstances, is to conduct 'a bench trial on the record.'' *Thomas v. Oregon Fruit*

14  *Products Co.,* 228 F.3d 991, 996 (9th Cir. 2000) […] 'In a trial on the record . . . the judge can

15  evaluate the persuasiveness of conflicting testimony and decide which is more likely true.' *Kearney*,

16  175 F.3d at 1095."  In *Morgan*, the court further explained that it must decide "whether [the plaintiff]

17  was disabled in the sense defined by the policy." *Kearney*, 175 F.3d at 1093; *see also Diaz v.*

18  *Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) (under *de novo* review, the court has to

19  resolve the "ultimate question" as to whether the plaintiff "was entitled to the benefits he sought

20  under the plan."); *see also Weber v. Saint Louis University*, 6 F.3d 558 (8th Cir. 1993).

21          In *Diaz,* the Seventh Circuit sought to define the "the common phrase '*de novo* review'

22  [when] used in connection with ERISA cases."  *Id.*  The Seventh Circuit held that:

23          [I]n these cases the district courts are not *reviewing* anything; they are making an

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE
RECORD - PAGE 14
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2356676v.1

1

2

3

independent decision about the employee's entitlement to benefits.   In the administrative arena, the court normally will be required to defer to the agency's findings of fact; when *de novo* consideration is appropriate in an ERISA case, in contrast, the court can and must come to an independent decision on both the legal and factual issues that form the basis of the claim.   ***What happened before the Plan administrator or ERISA fiduciary is irrelevant.***

4

5

*Id.* (emphasis supplied); *see also Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009).

6

7

8

9

10

11

12

As such, this Court is tasked with making an independent determination as to the claimant's entitlement to benefits under the Group Policy based on the evidence in the record before it without looking at the review of the claim by Principal Life.  *Compare Doe v. Prudential Ins. Co. of Am.*, CV 15-04089 AB (FFMx), 2017 U.S. Dist. LEXIS 45774 (C.D. Cal. March 27, 2017 (*citing Krolnik, supra,* ("'de novo review' is a misleading phrase . . . For what *Firestone* requires is not 'review' of any kind; it is an independent decision rather than 'review' that *Firestone* contemplates . . . [The] court takes evidence (if there is a dispute about a material fact) and makes an independent decision about how the language of the contract applies to those facts.").)

13

14

15

16

17

18

19

20

21

22

Based on Plaintiff's brief, however, it appears that Plaintiff wants it both ways:  having the Court make a determination under a *de novo* review without giving Principal Life's determination any deference and, at the same time, asking the Court to review Principal Life's review of Plaintiff's claim for procedural flaws and claims handling. Case law expressly excludes the second aspect from the court's determination of an ERISA disability case under a *de novo* review.  *Diaz*, 499 F.3d at 640.  The rationale for this rule is that, by reviewing the claim determination *de novo*, "[i]n effect, the plan administrator's decision has already been set aside under these circumstances, and the plan participant is provided with a fresh opportunity to prove that she is entitled to benefits pursuant to the terms of the plan."  *Walsh v. Long Term Disability Coverage for All Emples. Located in United States of DeVry, Inc.,* 601 F. Supp. 2d 1035, 1043 (N.D. Ill. 2009).  Thus, in a *de novo* review, "the

23

24

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD - PAGE 15
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2356676v.1

1    court must determine, based on all the evidence in the record, whether [a plaintiff] was qualified for

2    LTD benefits under the terms of the Policy. . . .  Consequently, under the *de novo* standard of review,

3    '[w]hat happened before the Plan administrator or ERISA fiduciary is irrelevant.'" *Marantz v.*

4    *Permanente Med. Group Inc. Long Term Disability Plan,* No. 06 C 3051, 2009 U.S. Dist. LEXIS

5    118594, *22 (N.D. Ill. Dec. 21, 2009) (quoting *Diaz II*, 499 F.3d at 643).

6        *Walsh*, in particular, makes clear that the claim fiduciary's claim review and procedures are

7    outside of the scope of a *de novo* review.  In that case, the plaintiff argued that "Defendants denied

8    [plaintiff] a 'full and fair review' of her benefits claim by ignoring relevant medical evidence."  601

9    F. Supp. 2d at 1041.  The court noted that while the plaintiff's argument could have merit under an

10   arbitrary and capricious standard, "*[d]e novo* review is different.  Under *de novo* review, the court's

11   primary duty is to determine the plaintiff's eligibility for benefits." *Id.* at 1043.  Accordingly, the

12   court held, in accordance with the principle announced in *Diaz II,* that "[w]hat happened before the

13   plan administrator or ERISA fiduciary is irrelevant[,] . . .  any procedural violations that may have

14   occurred in denying [a plaintiff's] LTD claim are also irrelevant."  *Id.* (internal citations omitted).

15   Moreover, "[b]ecause the remedy for any procedural violations has already been granted when a

16   court applies the *de novo* standard of review (i.e. setting aside the plan administrator's decision)," the

17   court held that it could "discern no reason to inquire further into Defendants' compliance with

     ERISA's procedural regulations in relation to [plaintiff's] LTD claim." *Id.*

18       Additionally, Principal Life's structural conflict of interest as payor of benefits and

19   adjudicator of claims plays no role whatsoever when the Court reviews the evidence before it to

20   determine whether Plaintiff is entitled to additional benefits.  For that reason, conflict of interest

21   discovery is not allowed in cases subject to a *de novo* review.  *See Rowell v. Aviza Tech. Health &*

22   *Welfare Plan, No.: C 10-5656 PSG, 2012 U.S. Dist. LEXIS 16957 (N.D. Ca. Feb. 10, 2012); Daul v.*

23   DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO          *Wilson Elser Moskowitz Edelman & Dicker LLP*
     PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE                *55 West Monroe Street, Suite 3800*
     RECORD - PAGE 16                                                              *Chicago, Illinois 60603*
24   Case No. 3:16-cv-05268-RJB                                                   *Tel.: (312) 821-6162*
                                                                                  *Fax: (312) 704-1522*

     2356676v.1

*PPM Energy, Inc.,* No. 08-CV-524-AC, 2010 U.S. Dist. LEXIS 107630 (D. Ore. Oct. 6, 2010) (relying on *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006)); *see also Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407 (3d Cir. 2011) ("Because we have concluded that a *de novo* standard of review applies, we need not reach Plaintiff's argument regarding LINA's conflict of interest in being both the payor and administrator of benefits. That issue is only pertinent to an abuse-of-discretion standard of review."); *Guy v. Sun Life Assur. Co.,* No. 10-CV-12150-DT, 2010 U.S. Dist. LEXIS 135615 (E.D. Mich. Dec. 22, 2010) ("Here, there is no dispute that Defendant operated under a structural conflict of interest. However, that conflict of interest only becomes relevant as a factor to weigh in determining whether Defendant abused its discretion in denying Plaintiff's claim. If the standard of review is *de novo*, Defendant's decision-making, and its conflict of interest, becomes irrelevant.")

As such, Plaintiff's arguments focusing on Principal Life's claim review (and whether or not it was full and fair) as well as its determination and conflict of interest are improper for a *de novo* standard of review and should be disregarded in their entirety to the extent the court agrees with Plaintiff that a *de novo* standard of review applies in this case.  The sole relevant inquiry for this Court is whether the evidence establishes Plaintiff's continued benefit eligibility under the terms of the Group Policy and within the confines of governing case law – thereby keeping in mind that it is Plaintiff's burden to show, by a preponderance of the evidence, that he is entitled to the benefits he seeks (***Principal Life does not have the burden to prove that he is not entitled***). *Compare Muniz v. Amec Const. Mgmt., Inc.,* 623 F.3d 1290, 1294 (9th Cir. 2010); *Sabatino v. Liberty Life Assurance Co. of Boston*, 286 F. Supp. 2d 1222, 1232 (N.D. Cal. 2003).  This burden cannot be met by Plaintiff pointing to a purported unreasonableness in Principal Life's determination process and the evidence it relied on but only by presenting his own competent and credible evidence in support of

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD - PAGE 17
Case No. 3:16-cv-05268-RJB

2356676v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

entitlement. The evidence before the Court demonstrates that he has not and cannot meet his burden in this case.

### B.  Plaintiff Does Not Contest that He Has Retained Full Time Medium Functional Capacity.

Under the Group Policy, Principal Life is only obligated to provide long term disability benefits so long as Plaintiff provides satisfactory written proof that he was "Disabled" as defined in the Group Policy; specifically, that he experienced restrictions and limitations so severe as to prevent him from performing the Substantial and Material Duties of **any** Gainful Occupation. Plaintiff did not contest during the administrative review of his claim that his medical records lacked all support for the contention that Plaintiff was unable to work full time in as much as a medium strength occupation. As set out in Principal Life's opening brief, Plaintiff's medical records show that Plaintiff was capable of medium level (including sedentary and light duty) full time work in April 2015.  (AR 1711, 225-232)  In Plaintiff's motion, Plaintiff likewise does not contest that his medical records demonstrate that he was capable of performing full time work at a sedentary, light and medium level.

### C.  Plaintiff Cannot Meet His Burden of Proof Relative To Continued Entitlement to Benefits.

Plaintiff's motion appears to raise three arguments in support of continued entitlement of benefits: (1) he is working as real estate sales agent even though his title is real estate broker; (2) Principal Life did not identify additional Gainful Occupations until the appeal level of his claim; and (3) Principal Life did not engage in a dialogue with him.  Plaintiff's arguments simply do not  hold water.

After Plaintiff obtained his real estate broker license in 2010, he started working at John L. Scott in 2010.  He has his own website and per Zillow.com has sold 16 properties in the last 12

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE
RECORD - PAGE 18
Case No. 3:16-cv-05268-RJB

2356676v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

months alone. *See above.* Principal Life reviewed wage data for Plaintiff's new occupation and verified in April 2015 an annual median salary of $65,290. (AR 1713, 1686-1687). On September 15, 2015, Principal Life confirmed the median salary by way of an independent employability assessment and labor market survey relative to the occupation of a real estate agent. (AR 1651-1652, 1645-1648)  Principal Life's correspondence informed Plaintiff further of the fact that the mean salary for a real estate broker was $80,420 in accordance with the US Bureau of Labor Statistics. (Id.) Updated U.S. Bureau of Labor Statistics confirm these findings for the Seattle-Bellevue-Tacoma area, identifying annual mean wages of $107,850 for brokers and $60,010 for Real Estate Sales Agents, **both** of which are Gainful occupations as defined in the Group Policy:

| 41-9021 | Real Estate Brokers | Detail | 330 | 28.9% | 0.175 | 0.60 | $32.13 | $51.85 | **$107,850** | 16.7% |
| 41-9022 | Real Estate Sales Agents | Detail | 5,080 | 7.2% | 2.710 | 2.51 | $23.42 | $28.85 | **$60,010** | 6.1% |

https://www.bls.gov/oes/current/oes_42660.htm (last visited June 28, 2017).

While Plaintiff may be correct that he is working as a Real Estate Sales Agent rather than a Real Estate Broker, not only is the occupation of Real Estate Sales Agent Gainful for him, *see above*, but his sales figures by themselves demonstrate that he is indeed working Gainfully.

But even if this were not the case, benefit entitlement is not conditioned upon the claimant actually working Gainfully, but rather upon the ***inability*** to perform the material and substantial duties of Any Gainful Occupation. Otherwise, a claimant could purposefully work just below the threshold of Gainful employment and ensure a continued benefit stream at the same time. Disability coverage is neither unemployment insurance nor is it business income loss insurance.

As set out already in Principal Life's opening brief, case law makes clear that "[a]s harsh as it may seem, the policy requires UNUM only to show that the insured is **capable** of performing any gainful occupation anywhere in the national economy." *See, e.g., Couzens v. Equitable Life Assur.*

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE
RECORD - PAGE 19
Case No. 3:16-cv-05268-RJB

2356676v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

1   *Soc'y of the U.S.,* No. 98-527, 1998 U.S. Dist. LEXIS 15505, (E.D. Pa. Oct. 2, 1998) ("Total

2   disability does not mean that Plaintiff cannot find a job, but rather that Plaintiff is unable to perform

3   any gainful occupation."); *Block v. Pitney Bowes Inc.,* 293 U.S. App. D.C. 256, 952 F.2d 1450, 1455

4   (D.C. Cir. 1992) (Ruth Bader Ginsberg, J.) ("No provision required Pitney Bowes, as a condition of

5   terminating Block's compensation, to 'ensure the availability of an alternative job.'"); *Heller v.*

6   *Fortis Benefits Ins. Co.*, 330 U.S. App. D.C. 39, 142 F.3d 487, 493 (D.C. Cir. 1998)." *Das v. Unum*

7   *Life Ins. Co. of Am.*, 2005 U.S. Dist. LEXIS 5461 (E.D. Pa. March 31, 2005), *aff'd Das v. UNUM*

8   *Life Ins. Co. of Am.*, 2007 U.S. App. LEXIS 6065 (3d Cir. Pa., Mar. 13, 2007).  Given the evidence

9   before the Court there can be no question that Plaintiff has the **ability** to perform the material and

10  substantial duties of a Gainful Occupation and that several Gainful Occupations **exist** within his

11  physical limitations and restrictions as well as within his education, training or experience.

12      Additionally, when evaluating the evidence, it must be considered that the Group Policy

13  defines Gainful Occupation as Employment in which the Member could ***reasonably be expected*** to

14  earn an amount equal or greater than the Primary Monthly Benefit. (AR 13) The Seventh Circuit in

15  *Donna Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357 (7th Cir. 2017) addressed this specific language

16  just a few months ago and found it to contemplate that an employee's income would increase as he

17  or she gains experience:

18      Second, Geiger asserts that Ms. Clifton's TSA did not consider the differing medical
        opinions and identified jobs that were inconsistent with Geiger's education, training
19      and experience. The TSA found at least two sedentary jobs, including Job
        Development Specialist and Commission Agent, consistent with Geiger's skills and
20      functional abilities and exceeded her wage criteria of $30.16 per hour. The Plan defines
        "reasonable occupation" as "any gainful occupation for which you are, *or may*
21      *reasonably become*, fitted by: education; training; or experience; and which results in;
        *or can be expected to result in*; an income of more than 60% of your adjusted
22      predisability earnings." (emphasis added).

23      Geiger argues that the occupational assessment improperly identified two qualifying

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE
RECORD - PAGE 20
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2356676v.1

occupations because she only had experience as an account manager at Sprint. However, the italicized language in the previous paragraph requires only that one "may reasonably become" fitted by education, training, or experience. Geiger also argues that as an employee with no prior experience as a job development specialist or commission agent she would likely earn less than the median income identified for those jobs. Again, the italicized language, "can be expected to result in," appears to contemplate that an employee's income would increase as he or she gains experience. […]

*Id.* at *363.

Given the Group Policy language in this case, as long as Plaintiff, based on an increase in experience, can ***reasonably be expected*** to eventually earn an income of at least $5,000.00 per month, less than the mean salaries identified (AR 775), Plaintiff is not qualified to receive further benefits under the Group Policy. His current sales numbers (as compared to his numbers in 2010 through 2015) underscore this assessment.

The Group Policy is similarly forward-looking relative to benefit eligibility under the any occupation portion of the Disability definition.  Benefit eligibility is conditioned upon the inability to perform the majority of the Substantial and Material Duties of any Gainful Occupation for which he or she is or ***may reasonably become qualified*** based on education, training or experience. (AR 13) While Plaintiff may not have been working as a Managing Broker as Plaintiff argues, there is no reason that Plaintiff would not be able to obtain his Managing Broker License and become reasonably qualified based on his education, training or experience, for the occupation of Managing Broker. Ms. Kemerer explained the requirements in her addendum report and it appears that Plaintiff has the necessary experience given that he has 7 years of real estate broker experience and would only need to complete the educational requirements and sit for the examination.  (AR 320)  As he may reasonably become qualified for the occupation of Managing Broker, which is Gainful, Plaintiff is barred from further benefits on that basis as well.

Second, Plaintiff's argument that the fact that Principal Life identified several additional

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD - PAGE 21
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2356676v.1

Gainful occupations during its review of Plaintiff's appeal is somehow detrimental is simply false. The administrative record before the Court demonstrates that Plaintiff was provided with another opportunity to submit evidence and request reconsideration after Principal Life's appeal determination and that he availed himself of this opportunity, providing Principal Life with an addendum report prepared by Ms. Kemerer, addressing the additional occupations.  (AR 320-322) Given these facts, it is unclear how Plaintiff can claim with a straight face that he was not provided with a full and fair review and that no dialogue was established.

The facts of the present matter also demonstrate that Plaintiff's reliance on *Feggins v. Reliance Standard Life Ins. Co.*, No. 11-cv-073-wmc, 2013 U.S. Dist. LEXIS 127113, at *3-4 (W.D. Wis. Sept. 5, 2013) is a red herring.  *Feggins* was decided under an arbitrary and capricious standard of review and did not include a single independent vocational assessment – unlike here where the file contains an independent vocational assessment as well as detailed employability analyses and labor market canvasses and samplings.  Regardless, unlike in *Feggins,* Principal Life did not fail to include any of the identified positions in its correspondence to Plaintiff, but set out in full detail assessment results, providing consistent opinions relative to the occupations *suitable* for Plaintiff based on his functional capabilities and his training, education or experience.  Moreover, while it is correct that Principal Life was able to identify additional Gainful occupations during the review of Plaintiff's appeal, Plaintiff was provided with an additional appeal and the opportunity to address and respond to same – which he did by way of Ms. Kemerer's addendum report.  Plaintiff's attempt to find fault with Principal Life's vocational evaluation – which smacks of desperation given that his arguments do not even attempt to comport with the facts of the case – should be rejected.

Finally, Plaintiff raises the boiler plate assertion that Principal Life failed to engage in a dialogue with him. While it is not even clear what Plaintiff's grievance is exactly, the administrative

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD - PAGE 22
Case No. 3:16-cv-05268-RJB

2356676v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

record before the Court also belies any assertion that he was not involved in a back and forth of information and updates – a dialogue.  Specifically, looking at the phone log alone, between the claim submission in 2009 and the termination in 2015, the call log is replete with phone conversations with and status updates to Plaintiff (AR 174-200).  Principal Life further called Plaintiff relative to the denial of his claim (AR 200) as well as status updates, as well as each decision with Plaintiff's counsel, whose office became involved as early as October 2015. (AR 201-207).

The administrative record demonstrates that Plaintiff received a full and fair review and based on his training, education or experience, it is evident that there exist Gainful Occupations in his local geographic area, including:

**FIRST-LINE SUPERVISOR OF TRANSPORTATION AND MATERIAL MOVING MACHINE AND VEHICLE OPERATOR**
This occupation requires education level of high school or more and is classified under light strength. The physical requirements include frequent lifting/carrying less than 10 pounds, sitting, walking, talking, reaching downward, near acuity, and depth perception; occasional lifting/carrying up to 20 pounds, reaching, reaching upward, standing, handling, keyboard use, fingering, hearing, and accommodations. The annual mean wage for this occupation in the Seattle/Tacoma/Bellevue, Washington area is $69,810.00.

**TRANSPORTATION, STORAGE, AND DISTRIBUTION MANAGER**
This occupation requires equivalent to a four year college degree in a non-technical field and is classified under sedentary strength. The physical requirements include frequent lifting/carrying less than 10 pounds, sitting, talking, keyboard use, hearing, and near acuity; occasional lifting/carrying up to 20 pounds, reaching, standing, walking, fingering, far acuity, depth perception, accommodations, color vision, and field vision. The annual mean wage for this occupation in the Seattle/Tacoma/Bellevue, Washington area is $101,170.00.

**REAL ESTATE BROKER**
This occupation requires equivalent to a four year college degree in a non-technical field and is classified under light strength. The physical requirements include frequent lifting/carrying less than 10 pounds, sitting, walking, talking, keyboard use, hearing, and near acuity; occasional lifting/carrying up to 20 pounds, reaching, standing, fingering, depth perception, and accommodations. The annual mean wage for this

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD - PAGE 23
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2356676v.1

occupation in the Seattle/Tacoma/Bellevue, Washington area is $86,410.00.

**PROPERTY, REAL ESTATE, AND COMMUNITY ASSOCIATION MANAGER**
This occupation requires equivalent to one year trade school, technical school, or junior college and is classified under light strength. The physical requirements include frequent lifting/carrying less than 10 pounds, sitting, talking, keyboard use, hearing, and near acuity; occasional lifting/carrying up to 20 pounds, reaching, standing, walking, crouching, crawling, climbing, balancing, handling, feeling, fingering, far acuity, depth perception, accommodations, color vision, and field vision. The annual mean wage for this occupation in the Seattle/Tacoma/Bellevue, Washington area is $79,740.00.  (AR 227)

Public data available relative to Plaintiff's work activities during the last twelve months also demonstrates that Plaintiff works Gainfully as a Real Estate Sales Agent, having sold a total of 16 properties since June 2016, three of them totaling in excess of a $1,000,000.00 in June 2017 alone. https://www.zillow.com/profile/Scott-R.-Paulson/ (last visited July 12, 2017).

For all of these reasons, Principal Life's determination to terminate Plaintiff's claim is clearly reasonable, as supported by substantial evidence, as well as correct. Judgment should be entered for Principal Life under either standard of review.

**IV.    CONCLUSION**

For all of the reasons discussed above, Principal Life respectfully requests that the District Court grant Principal Life's Motion for Judgment, affirming its determination to terminate Plaintiff's disability benefits and entering judgment in Principal Life's favor while denying Plaintiff's cross-motion.

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE
RECORD - PAGE 24
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2356676v.1

DATED this 14th day of July, 2017

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP

By: */s/ Edna S. Kersting*
    Edna S. Kersting, Illinois #6277775
    *(pro hac vice)*
    55 West Monroe Street, Suite 3800
    Chicago, IL 60603
    Tel: 312-821-6162
    Fax: 312-740-1522
    Email: edna.kersting@wilsonelser.com

INSLEE, BEST, DOEZIE & RYDER, P.S.

By: */s/ Dan S. Lossing*
    Dan S. Lossing, WSBA #13570
    10900 N.E. 4th Street, Suite 1500
    Bellevue, WA  98004
    Tel: 425-455-1234
    Fax: 425-635-7720
    Email: dlossing@insleebest.com

**Attorneys for Defendant Principal Life Insurance Company**

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD - PAGE 25
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2356676v.1

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on July 14, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

3

4

Dated this 14th day of July, 2017

5

*/s/ Edna S. Kersting*
Edna S. Kersting, Illinois #6277775

6

*(pro hac vice)*
55 West Monroe Street, Suite 3800
Chicago, IL 60603

7

Tel: 312-821-6162
Fax: 312-740-1522

8

Email: edna.kersting@wilsonelser.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD - PAGE 26
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

24

2356676v.1