THE HONORABLE ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SCOTT R. PAULSON,<br><br>Plaintiff,<br><br>v.<br><br>PRINCIPAL LIFE INSURANCE COMPANY,<br><br>Defendant. | No.: 3:16-cv-05268-RJB<br><br>PLAINTIFF'S MEMORANDUM IN REPLY TO PRINCIPAL LIFE INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE RECORD PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE<br><br>Noted for Consideration: August 8, 2017<br><br>Oral Argument Requested |

COMES NOW, PLAINTIFF, Scott R. Paulson, and submits his reply to Principal Life Insurance Company's Response to Plaintiff's Motion for Judgment on the Record Pursuant to Rule 52 of the Federal Rules of Civil Procedure.

1. **OVERVIEW**

Principal's Response may be broken down into four main arguments – standard of review, Principal did not abuse its discretion, Principal's procedural errors are

Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's Reply Memorandum
Page 1 of 13

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

irrelevant, and Paulson did not meet his burden. Paulson will limit his reply to these items and other than noting that Principal continues to wrongfully cite to evidence outside of the record and its continuing practice of switching from median to mean wage data when arguing Gainful Occupation, will not repeat arguments contained in his opening or response memorandums.

**2.   STANDARD OF REVIEW.**

   A.   <u>The court need not reach the issue of what standard of review is proper.</u>

Principal asserts that the proper standard of review is abuse of discretion (Dkt. #26 at p. 14), whereas Paulson contends it is de novo. In *Wilkinson v. Sun Life & Health Ins. Co.*, 674 F. App'x 294, 299-300 (4th Cir. 2017), the Fourth Circuit was asked to find error in the District Court's holding that the applicable standard was abuse of discretion. Addressing the argument, the Fourth Circuit held:

> Here, the district court applied the abuse of discretion standard because a document attached to and delivered with the benefits plan contained discretionary language. J.A. 223. The parties agree that if this document, referred to as the "Statement of ERISA Rights," is considered part of the plan, then the document clearly grants Sun Life discretionary authority. <u>While Sun Life contends that the abuse of discretion standard applies, Wilkinson contends that de novo review applies because the Statement of ERISA Rights was not part of the benefits plan.</u> **We need not reach the issue of whether the district court appropriately considered the document part of the plan because the standard of review is not outcome determinative. Even under the abuse of discretion standard, which is more favorable to Sun Life, we conclude that the district court properly granted judgment in Wilkinson's favor.**

*Wilkinson v. Sun Life & Health Ins. Co.*, 674 F. App'x 294, 299-300 (4th Cir. 2017)(Emphasis added).

Just as in *Wilkinson*, the parties disagree on the standard of review, and just as in *Wilkinson*, the court need not reach the issue, as even under the standard that is more

Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's Reply Memorandum
Page 2 of 13

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

deferential to Principal – abuse of discretion, it is clear that Principal's termination of benefits was arbitrary and capricious.

      B.      <u>Choice of law analysis controls the standard of review determination</u>.

If the court determines that it must reach the issue of determining the proper standard of review, then under Ninth Circuit precedent, the proper test to apply is set forth in the Restatement.

Principal, in its response, asserts that the Policy is governed by Texas law and that the discretionary clauses are enforceable. Dkt. #26 at p. 10. This is assertion is not correct. In ERISA governed LTD Plans, a choice of law provision is enforceable unless its application would be unreasonable or fundamentally unfair. *Wang Labs. v. Kagan*, 990 F.2d 1126, 1993 U.S. App. LEXIS 6929, 93 Cal. Daily Op. Service 2547, 93 Daily Journal DAR 4361, 16 Employee Benefits Cas. (BNA) 2108 (9th Cir. Cal. 1993).

> Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) <u>enforcement of the forum selection clause would contravene a strong public policy of the forum state</u>.

*Haynsworth v. Corporation*, 121 F.3d 956, 963 (5th Cir. Tex. 1997), quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 113 L. Ed. 2d 622, 111 S. Ct. 1522 (1991) (Emphasis added).

The Ninth Circuit follows the guidelines of the Restatement (Second) of Conflict of Laws § 187(2) (1971) when determining what constitutes "unreasonable" or "fundamentally unfair." Under the Restatement a choice of law provision agreed to by the parties will be enforced unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice; or (b) application of the law of the chosen state would be contrary to a fundamental

Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's Reply Memorandum
Page 3 of 13

ROY LAW
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties. *International Business Machines Corp. v. Bajorek*, 191 F.3d 1033, 1037 (9th Cir. 1999) (finding that it would be contrary to two fundamental policies of California for the Court to apply New York law: the prohibition of recoupment of employees' wages and limiting anti-competition agreements); *see also CH2O, Inc. v. Bernier*, 2011 WL 1485604, *7 (W.D. WA April 17, 2011).

Washington's Discretionary Clause Ban[1] is a regulation governing insurance and is enforceable. *Murray v. Anderson Bjornstad Kane Jacobs, Inc.*, No. C10-484 RSL, 2011 U.S. Dist. LEXIS 13962, at *6-7 (W.D. Wash. Feb. 10, 2011). It is also a regulation making a certain bargain illegal in Washington, and is designed to protect the insured against the superior bargaining power of the insurer. As such, the Discretionary Clause Ban is the type of policy that typically qualifies as "fundamental." *Carideo v. Dell, Inc.*, 492 F. Supp. 2d 1283, 1287 (W.D. Wash. 2007) (citing Restatement (Second) Conflict of Laws § 187 cmt. g). For example, "a fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power." *Rutter v. BX of Tri-Cities, Inc.*, 806 P.2d 1266, 1268 (Wn.App. 1991).

Washington's insurance code specifies that matters of insurance are of great importance to the public interest.

<u>The business of insurance is one affected by the public interest, requiring that all persons</u> be actuated by good faith, abstain from deception, and <u>practice honesty and equity in all insurance matters</u>. Upon the insurer, the insured, their

---

[1] WAC 284-96-012(1) "No disability insurance policy may contain a discretionary clause. 'Discretionary clause' means a provision that purports to reserve discretion to an insurer, its agents, officers, employees, or designees in interpreting the terms of a policy or deciding eligibility for benefits, or requires deference to such interpretations or decisions . . ."

Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's Reply Memorandum
Page 4 of 13

ROY LAW
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

providers, and their representatives <u>rests the duty of preserving inviolate the integrity of insurance</u>.

RCW 48.01.030 (emphasis added). The comments to the Restatement 2nd Conflicts of Law specifically state that statutes protecting the insured qualify as "fundamental."[2]

Washington's Discretionary Clause Ban is a regulation protecting the insured in Washington, as it directly affects the risk-pooling arrangement between insurer and insured in favor of the insured. See *Murray*, No. C10-484RSL, at *1. As such, it affects the public interest in the business of insurance, and is designed to protect individuals against insurance companies with superior bargaining power.

To determine which state has a materially greater interest in the outcome of an issue, the courts will look at "the purpose sought to be achieved by [the rule or law at issue] and upon the relation of the state to the transaction and the parties." *CH20 Inc. v. Berner*, No. C11-5153RJB, at *14 (W.D. Wash. April 18, 2011) (quoting Restatement (Second) Conflict of Laws § 188 cmt. c (Proposed Official Draft 1968)).

Washington has a materially greater interest in this issue. The purpose of Washington's Discretionary Clause Ban is to define the risk pooling arrangement between Washington's citizens and insurance companies. Allowing Principal's discretionary clause to stand would mean Washington's residents may be treated differently among themselves, and the foundational structure of Washington's insurance regulation would be undermined.

---

[2] "To be 'fundamental,' a policy must in any event be a substantial one. . . . <u>[A] fundamental policy may be embodied in a statute</u> which makes one or more kinds of contracts illegal or which is <u>designed to protect a person against the oppressive use of superior bargaining power. Statutes involving the rights of an individual insured as against an insurance company are an example of this sort</u> (see ss 192-93)." Restatement (Second) Conflicts of Law § 187 cmt. g (emphasis added).

Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's Reply Memorandum
Page 5 of 13

ROY LAW
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

Moreover, Washington is directly related to this transaction, as Paulson is a Washington resident, this Court is the Western District of Washington, and McLane does significant business in Washington. On the other hand, Texas has no material connection to this transaction, other than being the state of McLane's headquarters. Thus, Washington has a materially greater interest in the outcome of this issue than Texas.

Turning again to the *Flaaen* ruling, in addressing this issue, Judge Settle held:

> Finally, Flaaen argues that, if Texas law applies, the Court should decline to enforce the discretionary clause as a matter of public policy. Dkt. 16 at 12-15. "Washington courts will not implement a choice of law provision if it conflicts with a fundamental state policy . . . ." *Ito Int'l Corp. v. Prescott, Inc.*, 83 Wn. App. 282, 288, 921 P.2d 566 (1996) (citing *Rutter v. BX of Tri—Cities, Inc.*, 60 Wn. App. 743, 746, 806 P.2d 1266 (1991)). Fundamental public policy is generally found in legislative enactments declaring certain types of contracts illegal. Restatement (Second) Conflict of Laws § 187 cmt. g. Specifically, "[s]tatutes involving the rights of an individual insured as against an insurance company are an example of this sort [of fundamental policy]." *Id.* The Court should also balance the state's competing policies:
>
>> The forum will apply its own legal principles in determining whether a given policy is a fundamental one within the meaning of the present rule and whether the other state has a materially greater interest than the state of the chosen law in the determination of the particular issue.
>
> *Id.*
>
> In this case, the Court must balance competing interests. The interests in Principal's favor are (1) when the Plan was issued Texas allowed discretionary clauses and (2) national uniformity of determining the rights under the Plan. On December 23, 2010, however, Texas banned discretionary clauses. 28 Tex. Admin. Code § 3.1203. The legislative history of Washington's ban on such clauses states that the ban is consistent with National Association of Insurance Commissioners' endorsement of a ban on these clauses "as well as similar prohibitions adopted by other state insurance regulators." http://lawfilesext.leg.wa.gov/law/wsr/2009/07/09-07-030.htm (last visited December 21, 2016). In sum, the Court finds that the balance falls in Flaaen's favor. The national trend is to ban such clauses, and the Washington Insurance Commissioner stated that the clauses are

Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's Reply Memorandum
Page 6 of 13

ROY LAW
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

"prohibited . . . because they unreasonably or deceptively affect the risk purported to be assumed in the general coverage of the agreement." *Id.* The Court declines to enforce a clause that is unreasonable and deceptive. Therefore, the Court concludes that enforcement of the discretionary clause would violate a strong public policy in Washington.

*Flaaen v. Principal Life Ins. Co.*, No. C15-5899BHS, 2016 U.S. Dist. LEXIS 177638, at *12-14 (W.D. Wash. Dec. 22, 2016).

The Washington Legislature has made a clear statement that insurance impacts the public interest, and the "…duty of preserving inviolate the integrity of insurance" rests on all participants to the insurance transaction. RCW 48.01.030. The legislature has similarly adopted an equally broad scope of regulatory authority. RCW 48.01.020.

The Policy falls within RCW 48.01.020 in that the unambiguous terms of the Plan state that the Certificate was issued for delivery to the member – delivery in Washington, which is an Insurance Transaction, as is the payment of premiums. RCW 48.01.060. Further, the Plan affects subjects in Washington, and Paulson is a "Person" "having to do" with insurance. RCW 48.01.020. Once the Plan is brought under Washington's statutory umbrella, the state's regulations follow. RCW 48.02.060(3)(a).

### 3. PRINCIPAL'S PROCEDURAL ERRORS ARE REVENANT.

"When a district court reviews a plan administrator's decision under the de novo standard of review, the burden of proof is placed on the claimant. However, this does not relieve the plan administrator from its duty to engage in a 'meaningful dialogue' with the claimant about his claim. Even on de novo review, this Court can remand a disability claim to the plan administrator if the record is not sufficiently developed."

*Bunger v. Unum Life Ins. Co. of Am.*, 196 F. Supp. 3d 1175, 1186 (W.D. Wash. 2016)(internal citations and quotations omitted). See also, *Roberts v. Anthem Life Ins. Co.*, No. CV 16-00571-BRO (GJSx), 2017 U.S. Dist. LEXIS 87681, at *7 (C.D. Cal. June 7, 2017)("Remand in ERISA disputes is 'appropriate in a variety of circumstance' — particularly if an 'administrator's decision suffers from a procedural defect or the

Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's Reply Memorandum
Page 7 of 13

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

administrative record is factually incomplete.' In particular, the Ninth Circuit has explained that remand to the plan administrator may be appropriate for denial of full and fair review to assess the affect and failure of the administrator to provide a denial of full and fair review. . . . Remand is not mandatory, however. The Ninth Circuit has instructed that a trial court has the authority to consider new evidence itself—i.e., not to remand.")(Internal citations and inline quotations omitted).

A carrier also waives the right to bring up reasons for denial not alleged in the original denial letter. *Harlick v. Blue Shield of California*, 686 F.3d 699, 719 (9th Cir. 2012). Further, instances of abuse of discretion, to to the weight of the insurance company's evidence.

> MetLife, in turn, claims that, since the standard of review is de novo and not abuse of discretion, none of these points matter. MetLife correctly identifies the appropriate standard of review but incorrectly applies it. This proceeding is a trial on the administrative record, and Watson's allegations *go to the weight that the Court should assign the evidence and conclusions of the MetLife consultants*. If all of these issues would be relevant in an abuse of discretion case, they are just as relevant in a de novo case. Therefore, Watson's various *claims regarding the MetLife review process are relevant to the credibility of MetLife's evidence*.

*Watson v. Metro Life Ins. Co.*, No. CV-11-01393-PHX-GMS, 2012 WL 5464986, at *9 (D. Ariz. Nov. 8, 2012) (emphasis added).

4.  **PRINCIPAL'S EXHAUSTIVE VOCATIONAL REVIEW WAS INADEQUATE.**

There is no dispute that Paulson suffered an industrial injury and as a result, has permanent restrictions and limitations. Dkt. #21 at p. 1711, 1884-1885. The dispute is over Paulson's ability to perform a Gainful Occupation – an occupation that pays at least $60,000.00 per year. Dkt. #21 at p. 199.

When restrictions and limitations are present and the definition of disability has an income qualifier (must be able to make at least X percent of basic monthly earnings), as is the case in this matter (Dkt. #21 at p. 13, 199), it is an abuse of discretion for a

Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's Reply Memorandum
Page 8 of 13

ROY LAW
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

claims administrator not to conduct a vocational analysis to determine if there are any qualifying jobs available. *Moore v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, 282 Fed. Appx. 599, 2008 U.S. App. LEXIS 12882 (9th Cir. Cal. 2008); *Burke v. Pitney Bowes, Inc. Long-Term Disability Plan*, 2006 U.S. Dist. LEXIS 15, 2006 WL 13097 (N.D. Cal. Jan. 3, 2006)(Vacated and remanded on different grounds).

> The court finds that although the record supports the Committee's finding that plaintiff can enter the workforce, the Committee's determination with respect to the level of earnings that plaintiff would be able to procure is an abuse of discretion as it appears to be based on mere conjecture rather than on a reasonable fact-finding process. … In the case at hand, unlike in McKenzie, the fiduciary's decision is not simply a determination that plaintiff is able to perform "some identifiable job" or to obtain "any occupation," but is also a determination that this job will generate at least sixty percent of plaintiff's pre-disability earnings. The Committee decision notes that plaintiff has a college degree and extensive work experience, however the Committee does not list any reasonable evidence upon which it relies in concluding that the plaintiff could earn an annual income of $ 30,326.40. In this situation, although the medical evidence supports a finding that plaintiff is employable, it does not support a determination which purports to quantify any potential earnings by plaintiff. Thus, either vocational evidence, presented by "someone knowledgeable about the physical demands and requirements of occupations for which a claimant might be qualified" or other reliable evidence should have been used by the plan administrator in reaching its decision. See McKenzie (quoting Jenkinson v. Chevron Corp., 634 F. Supp. 375, 379 (N.D. Cal. 1986)).

*Burke*, 2006 U.S. LEXIS at *27 – 30.

This rule is in keeping with *Feggins v. Reliance Std. Life Ins. Co.*, No. 11-cv-073-wmc, 2013 U.S. Dist. LEXIS 127113, at *15 (W.D. Wis. Sep. 5, 2013)("administrator carries the burden of articulating why it believes an applicant is capable (both physically and by dint of education and training) of performing a given occupation, even when the plan requires that the claimant prove she is incapable of performing 'any occupation.'"), which is discussed at length in Paulson's opening memo. Dkt. #23 at p. 11-13.

Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's Reply Memorandum
Page 9 of 13

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawpdx.com

Principal contends it "completed extensive vocational research relative to the occupations of Real Estate Broker as well as Transportation Manger, Truck Driver Supervisor, and Property Manager." Dkt. #26 at p. 6-7. To support this contention, it cites to page 405 of the record (Dkt. #21 at p. 405). Dkt. #26 at p. 7. Principal then goes on to cite to pages 406-705 of the record (Dkt. #21 at p. 406-705) as research showing this extensive review. Dkt. #26 at p. 7.

Page 405 of the record is a one sentence email from December 7, 2015, which reads "Hi- Please upload the following documents to the claim file: 5123308. Thank you- Justin," with multiple attachments which are presumably pages 406-705 of the record. Dkt. #21 at p. 405-705. Pages 406-705 of the record (Dkt. #21 at p. 406-705) are simply printouts of reports from eDOT and the US Bureau of Labor Statistics. The portions of the record cited by Principal do not show a review or analysis of any sort.

In contrast, the report by Paulson's expert (Dkt. #21 at p. 317-323), contains the expert's analysis and shows how she reached her opinions. Dkt. #21 at p. 321-322. There is nothing in pages 405-705 of the record – the pages Principal cites to, which shows any type of analysis, let alone any type of conclusion. Dkt. #21 p. 405-705. See generally, *Van Arsdel v. Liberty Life Assurance Co.*, No. 14-2579, 2017 U.S. Dist. LEXIS 47470, at *94-95 (E.D. Pa. Mar. 30, 2017).

**4.     There is sufficient evidence in the record to satisfy Paulson's burden.**

Paulson has permanent restrictions and limitations. Under the policy, he is deemed disabled if he is unable to earn $60,000.00 per year. Dkt. #21 at p. 199. Principal reviewed the matter and concluded that Paulson "cannot perform the majority of the Substantial and Material Duties of any Gainful Occupation…." Dkt. #21 at p. 144.

> Note that since this is a Mc Lane claim and the claimant was a highly-compensated individual, Gainful Occupation definition of disability will be a factor in our decision. The insured worked for Mc Lane for 20 years prior to becoming disabled and another trucking firm for 10 years before that, he has a high school education and one year of college. Discussion: The claimant has
Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's Reply Memorandum
Page 10 of 13

ROY LAW
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

> permanent restrictions as a result of his work related injury. He has a high school education with one year of college and his work history is limited to truck driving. He has obtained his real estate license and has three listings currently. The Gainful Occupation definition of disability applies to the Any Occupation decision, and the claimant's pre-disability earnings were significant (over $100K annually.) Action Plan: We will discuss possible alternate funding arrangement with senior staff. Will also discuss requirement of claimant to provide monthly listings so sales can be tracked.

Dkt. #21 at p. 187.[3]

Principal never asserted that Paulson could meet the Gainful Occupation standard until after it looked at the potential income of a real estate agent and then reached the unsupportable conclusion that the median wage of an agent exceeds $60,000.00 per year. Dkt. #21 at p. 1713, 1645-1648, 1630-1631. A position it immediately abandoned.

---

[3] See also, Principal's Claim Notes of February 1, 2011 "Any and All Decision: The claimant is a 52 year old former truck driver for Mc Lane who became unable to perform the duties of his Mc Lane job due to a large rotator cuff tear in his left shoulder that was due to a work related injury on 12/5/08. He was retained by Mc Lane on light-duty work until October 2009 and was then terminated. He became eligible for LTD benefits in April 2010 and has been receiving them since on the basis he remains unable to perform the duties of his Mc Lane truck driving job which requires the ability to unload the trucks and is therefore very heavy work. He has been pursuing a career in real estate sales. He is not currently receiving active medical treatment for his injury, but has been given a permanent impairment rating of 19% of his left arm on the basis of his injury. Please see the notes tab for my recent conversations with the insured and Vicki's previous discussions, as well as the recent APM, and the documents tab for most recent medical we have received and the EA/LMS we obtained. Since this is a Mc Lane claim and the claimant was a highly-compensated individual, Gainful Occupation definition of disability is a factor in our decision. The insured worked for Mc Lane for 20 years prior to becoming disabled and another trucking firm for 10 years before that, he has a high school education and one year of college. Although it is clear that he is not medically totally disabled and therefore not a good candidate for SSDI benefits, it is very unlikely based on the EA/LMS results that a gainful occupation position can be found for him given his age, education and limited work experience. In fact, his choice to pursue real estate sales may well prove to be the most potentially lucrative vocational alternative for him at this time and we will therefore need to monitor his activities in this area and ascertain any income he receives from home sales going forward. Given all of these facts I recommend approval of this claim beyond the Any Occupation date of 4/22/11. I will arrange to discuss a possible alternative funding arrangement with senior staff as the claimant would appear to be a logical candidate for this consideration. The claim analytic scores are 5-7-7-8, indicating a better than average likelihood of RTW. Claim did not lock into review. Status changed to complete." Dkt. #21 at p. 188-189.

Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's Reply Memorandum
Page 11 of 13

ROY LAW
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

Principal obtained an Employability Assessment – Labor Market Survey from Adling and Associates, which found that Paulson was not capable of performing a Gainful Occupation (i.e. earning $60,000.00/year). Dkt. #21 at p. 2063-2077. The assessment also looked at jobs similar to two occupations currently being put forth by Principal – First Line Supervisor of Transportation, and Transportation, Storage, and Distribution Manager, and noted:

> [T]he employers contacted indicated that these positions may require physical lifting in excess of 20# and may require frequent standing/walking. The employers contacted indicated that the positions tended to require either an Associate's Degree or Bachelor's Degree in a Business Administration/management field and/or several years of management experience.

Dkt. #21 at p 2074

The record also contains a Vocational Assessment by Strategic Consulting Services which analyzed the positions suggested by Principal and gave a reasoned opinion on why they were not Gainful Occupations. Dkt. #21 at p. 321-323.

### 5. Conclusion

Principal failed to engage in a reasoned and deliberate process, when it terminated benefits, and since that decision, has changed the grounds for denial, and is now asserting new grounds. The record supports Paulson's contention that he is disabled, as the term is defined under the policy. Paulson's motion should be granted, and benefits reinstated, with an award of fees and costs.

DATED this 31st day of July, 2017.

/s/ Chris Roy
Chris Roy, WSB # 29070
Roy Law
1000 Broadway, Ste. 1740
Portland, OR 97205
PH: 503-206-4313
FAX: 855-344-1726
chris@roylawpdx.com

Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's Reply Memorandum
Page 12 of 13

ROY LAW
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com

## **CERTIFICATE OF SERVICE**

I certify that on July 31, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorneys/parties of record.

DATED this 31st day of July, 2017.

/s/ Chris Roy
Chris Roy, WSB # 29070
Roy Law
1000 SW Broadway, Suite 1740
Portland, OR 97205
PH: 503-206-4313
FAX:855-344-1726
chris@roylawpdx.com

Paulson v. Principal
Case No. 3:16-cv-05268-RJB
Plaintiff's Reply Memorandum
Page 13 of 13

**ROY LAW**
1000 SW Broadway, #1740
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawpdx.com