1

Hon. Robert J. Bryan

2

3

4

5

6

IN THE UNITED STATES DISTRICT COURT

7

FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

8

| | |
|---|---|
| SCOTT R. PAULSON, | Case No. 3:16-cv-05268-RJB |
| Plaintiff, | **DEFENDANT PRINCIPAL LIFE** |
| vs. | **INSURANCE COMPANY'S REPLY TO** |
| | **PLAINTIFF'S MOTION FOR** |
| PRINCIPAL LIFE INSURANCE COMPANY, | **JUDGMENT ON THE** |
| | **ADMINISTRATIVE RECORD** |
| Defendant. | **PURSUANT TO RULE 52 OF THE** |
| | **FEDERAL RULES OF CIVIL** |
| | **PROCEDURE** |
| | |
| | **TRIAL DATE: August 8, 2017 at 9:30 am** |

## I.    <u>INTRODUCTION</u>

Plaintiff's entire claim is based on the utterly disingenuous argument that he lacks the *ability* to work in *any Gainful occupation.* This is simply not true. The record demonstrates that Plaintiff is certainly able to work Gainfully and there are several Gainful Occupations for which he either *currently is* or *could reasonably become* qualified based on his training, education, and experience. Plaintiff would have this Court disregard the fact that he has held a license to sell real estate properties since June 24, 2010 (just over seven years), and has been gaining training and experience in that field ever since. He is, in fact, working Gainfully in his

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2364096v.1

chosen occupation of Real Estate Broker and sold in excess of $5.0 Million in properties in the last 12 months alone. Likewise, Plaintiff would have the court ignore his twenty years of experience in the transportation and trucking industry prior to the onset of his disability.

For the reasons set out in Principal Life's opening brief and its responsive brief, which are fully incorporated herein, Principal Life's decision to terminate Plaintiff's long-term disability benefits should be upheld because the record before this Court unequivocally shows that there are Gainful Occupations within Plaintiff's physical restrictions and that Plaintiff is qualified for and/or can become qualified for based on his education, training, and experience. Thus, Plaintiff simply cannot meet the Group Policy's definition of Disability for the Any Occupation period in question and judgment should be entered in favor of Principal Life under either standard of review.

## II.    PRINCIPAL LIFE'S DECISION SHOULD STAND UNDER EITHER STANDARD OF REVIEW

### A. The Group Policy Mandates an Arbitrary and Capricious Standard of Review.

On the basis of *Flaaen v. Principal Life Ins. Co.*, No. C15-5899BHS, 2016 U.S. Dist. LEXIS 177638 (W.D. Wash. Dec. 22, 2016), which is not binding on this Court, Plaintiff challenges Principal Life's position that an arbitrary and capricious standard of review is applicable to this Court's review, contrary to the clear Group Policy language.  Plaintiff concedes in his brief that the Group Policy, which was issued and delivered in Texas and has a choice of law provision, contains an express discretionary clause, conveying discretionary authority upon Principal Life to determine benefit eligibility and interpret the terms of the Group Policy, but argues that given Washington State's ban of discretionary clauses, a *de novo* standard of review applies to this matter.

DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR JUDGMENT ON
THE ADMINISTRATIVE RECORD - PAGE 2
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2364096v.1

1    Nonetheless, his brief argues that Principal Life's determination was ***arbitrary and***

2    ***capricious*** rather than focusing on satisfying his burden of proving entitlement to benefits by a

3    preponderance of evidence based on the administrative record as necessary to prevail under the

4    *de novo* standard of review he would have the court apply.  Just as with his argument that he

5    should still be entitled to long-term disability benefits even while he is working Gainfully as a

6    Real Estate Broker, Plaintiff attempts to "have his cake and eat it too" with regard to the

7    standard of review.

8    It is clear on its face that the Group Policy was issued and delivered and paid for in

9    Texas and is subject to Texas law by its own provisions. (AR 5, 72, 119-123).  It has been

10    settled law in the Ninth Circuit that in determining the applicable standard of review, a choice

11    of law provision in an ERISA plan should be followed unless unreasonable or fundamentally

12    unfair. *See Fenberg v. Cowden Auto. Long Term Disability Plan*, Nos. 05-17192, 06-15132,

13    259 Fed. Appx. 958, 2007 U.S. App. LEXIS 29438, *1 (9th Cir. Dec. 17, 2007); *Gonda v. The*

14    *Permanente Medical Group, Inc.*, No. 11-cv-01363-SC, 2015 U.S. Dist. LEXIS 18892 (N.D.

15    Cal. Feb. 17, 2015) (acknowledging that *Fenberg* had broadened the application of *Wang* [*Lab*

16    *v. Kagan*, 990 F.2d 1126 (9th Cir. 1993)] to determinations of the applicable standard of

17    review in ERISA benefits cases, *id.* at *21, FN. 2); *Doe v. PriceWaterHouseCoopers Health &*

18    *Welfare Plan*, No. C 13-02710 JSW, 2014 U.S. Dist. LEXIS 81071 (N.D. Cal. June 11, 2014)

19    (upholding choice of law provision in ERISA plan.).

20    The Group Policy on which Plaintiff relies for his entitlement to benefits contains such

21    a choice of law provision, stating that the Group Policy is governed by and subject to Texas

22    law. (AR 72). The Group Policy was applied for by, negotiated with and issued to McLane, a

23    Texas company, in Texas. (AR 119-123)  It was delivered in Texas and billed in Texas and the

DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR JUDGMENT ON
THE ADMINISTRATIVE RECORD - PAGE 3
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2364096v.1

1   premises were paid from Texas. (Id.)  Applying the laws of the State of Texas to the Group

2   Policy is neither unreasonable nor fundamentally unfair, but instead is required by settled

3   Ninth Circuit law and principles of uniformity, predictability and fairness inherent to ERISA.

4   An arbitrary and capricious standard of review should guide this Court's review of Principal

5   Life's determination.

6          Irrespective of the choice of law provision contained in the group contract, however, it

7   is also settled insurance law that the law of the state of issuance of an insurance contract

    governs any disputes under the contract. *See Home Ins. Co. v. Dick*, 281 U.S. 397 (1930); *John*

8   *Hancock Mutual Life Ins. Co. v. Yates*, 299 U.S. 178 (1936), where the Supreme Court found

9   non-significant forum contact when the insurance policies to be interpreted had been issued

10  and delivered in a state/country other than the forum state.  Principal Life respectfully submits

11  that this Court should review the termination of Plaintiff's claim under an arbitrary and

12  capricious standard of review.   *See also* ([DE# 26] Plaintiff's brief at p. 6.)   As its

13  determination is supported by substantial evidence as set out in full detail in its previous briefs,

14  Principal Life should prevail.

15      **B.  Principal Life's Determination Was Not An Abuse Of Discretion And Should
            Be Upheld Under The Arbitrary And Capricious Standard Of Review.**

16
17      "The Supreme Court has held that a denial of benefits 'is to be reviewed under a *de*

18  *novo* standard unless the benefit plan gives the administrator [. . .] discretionary authority to

19  determine eligibility for benefits or to construe the terms of the plan.'" *Burke v. Pitney Bowes*

20  *Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1023 (9th Cir. 2008) (quoting *Firestone Tire*

21  *& Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Where the plan "does grant such

22  discretionary authority, we review the administrator's decision for abuse of discretion." *Saffon*

23  DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR JUDGMENT ON
    THE ADMINISTRATIVE RECORD - PAGE 4
    Case No. 3:16-cv-05268-RJB

24

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2364096v.1

1  *v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 866 (9th Cir. 2008).

2  There can be no question that the discretionary clauses unambiguously vest Principal

3  Life with the discretion to determine benefit eligibility and to construe the terms of the group

4  insurance issued.  The Ninth Circuit has held that in the ERISA context, "the test for abuse of

5  discretion in a factual determination…is whether [the Court] is 'left with a definite and firm

6  conviction that a mistake has been committed,' and [the Court] may not merely substitute [its]

7  view for that of the fact finder." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666,

8  2011 U.S. App. LEXIS 4386 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247

9  (9th Cir. 2009) (en banc).) "To do so, [the Court] consider[s] whether application of a correct

10  legal standard was "(1) illogical, (2) implausible, or (3) without support in inferences that may

11  be drawn from the facts in the record." *Id*.  Here, there is nothing in the record evidence to

12  suggest that Principal Life's determination was "illogical, implausible or without support" nor

13  is there anything that could leave the court with the "firm conviction that a mistake has been

14  made." *Id*.

15  Even when a claims administrator's decision is contrary to some evidence in the

16  administrative record, it does not mean that the denial of benefits was an abuse of discretion. *Taft*

17  *v. Equitable Life Assur. Soc*, 9 F.3d 1469, 1473 (9th Cir. 1993).  However, "[a]pplying a

18  deferential standard of review does not mean that the plan administrator will prevail on the merits.

19  It means only that the plan administrator's interpretation of the plan "'will not be disturbed if

20  reasonable.'" *Conkright v. Frommert*, 130 S. Ct. 1640, 1651 (2010) (quoting *Firestone*, 489 U.S.

21  at 111).

22  Accordingly, under these principles, the task of this Court is to determine whether

23  Principal Life's decision to terminate Plaintiff's long term disability benefits was reasonable,

24

DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR JUDGMENT ON
THE ADMINISTRATIVE RECORD - PAGE 5
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2364096v.1

i.e. not illogical, implausible or without support.

**C. Principal Life's Determination Was Also Correct And Should Be Upheld Under The *De Novo* Standard Of Review.**

To the extent that this Court finds that a *de novo* standard of review applies here, Principal Life's claim review no longer is at issue but instead the Court must focus on the ultimate question: is plaintiff entitled to additional benefits under the Group Policy? As such, this Court is tasked with making an independent determination as to the claimant's entitlement to benefits under the Group Policy based on the evidence in the record before it without looking at Principal Life's review of the claim. *Compare Doe v. Prudential Ins. Co. of Am.*, CV 15-04089 AB (FFMx), 2017 U.S. Dist. LEXIS 45774 (C.D. Cal. March 27, 2017 (*citing Krolnik, supra,* ("'de novo review' is a misleading phrase . . . For what *Firestone* requires is not 'review' of any kind; it is an independent decision rather than 'review' that *Firestone* contemplates . . . [The] court takes evidence (if there is a dispute about a material fact) and makes an independent decision about how the language of the contract applies to those facts.").)

Based on Plaintiff's briefs, however, it appears that Plaintiff wants it both ways: having the Court make a determination under a *de novo* review without giving Principal Life's determination any deference and, at the same time, asking the Court to review Principal Life's assessment of Plaintiff's claim for procedural flaws and claims handling. Case law expressly excludes the second aspect from the court's determination of an ERISA disability case under a *de novo* review. *Diaz*, 499 F.3d at 640. The rationale for this rule is that, by reviewing the claim determination *de novo*, "[i]n effect, the plan administrator's decision has already been set aside under these circumstances, and the plan participant is provided with a fresh

DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR JUDGMENT ON
THE ADMINISTRATIVE RECORD - PAGE 6
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2364096v.1

opportunity to prove that she is entitled to benefits pursuant to the terms of the plan." *Walsh v. Long Term Disability Coverage for All Emples. Located in United States of DeVry, Inc.,* 601 F. Supp. 2d 1035, 1043 (N.D. Ill. 2009).   Thus, in a *de novo* review, "the court must determine, based on all the evidence in the record, whether [a plaintiff] was qualified for LTD benefits under the terms of the Policy. . . .   Consequently, under the *de novo* standard of review, '[w]hat happened before the Plan administrator or ERISA fiduciary is irrelevant.'" *Marantz v. Permanente Med. Group Inc. Long Term Disability Plan,* No. 06 C 3051, 2009 U.S. Dist. LEXIS 118594, *22 (N.D. Ill. Dec. 21, 2009) (quoting *Diaz II*, 499 F.3d at 643).

Additionally, Principal Life's structural conflict of interest as payor of benefits and adjudicator of claims plays no role whatsoever when the Court reviews the evidence before it to determine whether Plaintiff is entitled to additional benefits.  For that reason, conflict of interest discovery is not allowed in cases subject to a *de novo* review.  *See Rowell v. Aviza Tech. Health & Welfare Plan,* No.: C 10-5656 PSG, 2012 U.S. Dist. LEXIS 16957 (N.D. Ca. Feb. 10, 2012); *Daul v. PPM Energy, Inc.,* No. 08-CV-524-AC, 2010 U.S. Dist. LEXIS 107630 (D. Ore. Oct. 6, 2010) (relying on *Abatie v. Alta Health & Life Ins. Co*., 458 F.3d 955 (9th Cir. 2006)); *see also Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407 (3d Cir. 2011) ("Because we have concluded that a *de novo* standard of review applies, we need not reach Plaintiff's argument regarding LINA's conflict of interest in being both the payor and administrator of benefits. That issue is only pertinent to an abuse-of-discretion standard of review."); *Guy v. Sun Life Assur. Co.,* No. 10-CV-12150-DT, 2010 U.S. Dist. LEXIS 135615 (E.D. Mich. Dec. 22, 2010) ("Here, there is no dispute that Defendant operated under a structural conflict of interest. However, that conflict of interest only becomes relevant as a factor to weigh in determining whether Defendant abused its discretion in denying Plaintiff's

DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR JUDGMENT ON
THE ADMINISTRATIVE RECORD - PAGE 7
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2364096v.1

claim. If the standard of review is *de novo*, Defendant's decision-making, and its conflict of interest, becomes irrelevant.")

As such, Plaintiff's arguments focusing on Principal Life's claim review (and whether or not it was full and fair) as well as its determination and conflict of interest are improper for a *de novo* standard of review and should be disregarded in their entirety to the extent the court agrees with Plaintiff that a *de novo* standard of review applies in this case. The sole relevant inquiry for this Court is whether the evidence establishes Plaintiff's continued benefit eligibility under the terms of the Group Policy and within the confines of governing case law – thereby keeping in mind that it is Plaintiff's burden to show, by a preponderance of the evidence, that he is entitled to the benefits he seeks (***Principal Life does not have the burden to prove that he is not entitled***).

## III.   DISABILITY BENEFITS ARE NOT A HEDGE ON PLAINTIFF'S CHOICE OF OCCUPATION

Disability benefit plans provided by employers do not insure against a participant's choice of an unpredictable, commission-based occupation. Principal Life provided Plaintiff with an opportunity to obtain additional education and job retraining. Plaintiff elected to enter an unpredictable, commission-based occupation when he became a realtor. Now, it seems, Plaintiff wants to have his cake and eat it too. Despite the fact that Plaintiff maintains functional capacity to perform a full range of sedentary, light, and medium strength level occupations which would have a steady and stable salary, he has elected to pursue an occupation with unpredictable earnings. Plaintiff expects Principal Life to continue paying him disability benefits even though ***he has the ability*** to perform the material and substantial duties of many different Gainful Occupations.

DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR JUDGMENT ON
THE ADMINISTRATIVE RECORD - PAGE 8
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2364096v.1

1    Such a result would be contrary to the clear terms of the Policy.  Plaintiff's counsel

2    would have this Court ignore the fact that the Policy language requires only that:

3    > After completing the Elimination Period and the Own Occupation Period, one of
   > the following applies:

4
     >    a.  The Member ***cannot perform the majority of the Substantial and Material***
5    > ***Duties*** of ***any*** Gainful Occupation for which he or she ***is or may reasonably***
     > ***become*** qualified on education, training, or experience.
6    >    b.  The Member is performing the Substantial and Material Duties of his or her Own
     > Occupation or any occupation on a Modified Basis and is unable to earn more
     > than 60% of his or her Indexed Predisability Earnings.

7    (AR 13) (emphasis supplied).  The Policy defines Gainful Occupation as "employment in

8    which the Member could reasonably be expected to earn an amount equal to or greater than the

9    Primary Monthly Benefit." (AR 13).  The Primary Monthly Benefit here is the same as the

10   Maximum Monthly Benefit or $5,000 per month ($60,000 per year).

11   **IV.    PLAINTIFF MAINTAINS THE FUNCTIONAL CAPACITY AS WELL AS THE**
     **KNOWLEDGE, SKILLS, AND ABILITIES TO PERFORM VARIOUS GAINFUL**
12   **OCCUPATIONS**

13       It is baffling that Plaintiff continues to argue that he cannot perform the material and

14   substantial duties of ***any*** occupation that would earn at least $5,000 a month even though he

15   retains the functional capacity to perform occupations at the sedentary, light, and medium

16   exertion levels.  Furthermore, Plaintiff ignores the ***twenty years[1] he spent working in the***

17   ***transportation and trucking industry***, which would almost certainly qualify him for a Gainful

18   Occupation in that industry that would fall within his physical restrictions and limitations,

19   perhaps the occupations of First-Line Supervisor of Transportation and Material Moving

20   Machine and Vehicle Operation or Transportation, Storage, and Distribution Manager as

21   _____

22       [1] Plaintiff started working for McLane as a truck driver on April 18, 1988. (AR 2314).  His last
     day worked was December 5, 2008. (AR 2354).

23   DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR JUDGMENT ON          *Wilson Elser Moskowitz Edelman & Dicker LLP*
     THE ADMINISTRATIVE RECORD - PAGE 9                              *55 West Monroe Street, Suite 3800*
     Case No. 3:16-cv-05268-RJB                                     *Chicago, Illinois 60603*
     24                                                      *Tel.: (312) 821-6162*
                                                            *Fax: (312) 704-1522*

     2364096v.1

Principal Life identified.  And, Plaintiff ignores his **_now seven years[2] of experience working in the real estate industry_**, which would almost certainly help to qualify him for the occupations of Real Estate Broker and Property, Real Estate, And Community Association Manager (if he is not already qualified for same.)

Furthermore, a side-by-side comparison of the Knowledge[3], Skills[4], and Abilities[5] identified in O*Net as necessary to perform the identified occupations reveals that the same core competencies are necessary to perform all of the identified occupations.  This renders Plaintiff's claim that he is unable to perform any Gainful occupation (besides Real Estate Sales Agent, of course) utterly preposterous when considering that Plaintiff has been making use of all of his knowledge, skills, and abilities to perform a Gainful Occupation now for _seven years_. A table attached hereto as **Exhibit A** shows that the Knowledge, Skills, and Abilities identified in O*Net for the identified occupations are the same. Logically then, it is impossible that Plaintiff can perform the material and substantial duties of a Real Estate Sales Agent but not of the other three identified occupations.

All identified occupations require customer and personal service, administration and management, clerical work, and use of computers and electronics.  They all require active listening, coordination, critical thinking, judgment and decision making, time management, and complex problem solving.  They all require oral comprehension, oral expression, written

---

[2] Five years of experience in the real estate industry as of the termination of disability benefits.

[3] O*Net defines Knowledge as "organized sets of principles and facts applying in general domains. https://www.onetcenter.org/content.html

[4] O*Net defines Basic Skills as "developed capacities that facilitate learning or the more rapid acquisition of knowledge"; O*Net defines Cross-Functional Skills as "developed capacities that facilitate performance of activities that occur across jobs. https://www.onetcenter.org/content.html

[5] O*Net defines Abilities as "enduring attributes of the individual that influence performance." https://www.onetcenter.org/content.html

DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR JUDGMENT ON
THE ADMINISTRATIVE RECORD - PAGE 10
Case No. 3:16-cv-05268-RJB

_Wilson Elser Moskowitz Edelman & Dicker LLP_
_55 West Monroe Street, Suite 3800_
_Chicago, Illinois 60603_
_Tel.: (312) 821-6162_
_Fax: (312) 704-1522_

2364096v.1

comprehension, deductive reasoning, problem sensitivity, inductive reasoning, and information ordering.   It defies logic that Plaintiff has been employing all of the above enumerated knowledge, skills, and abilities in his real estate practice, but would be unable to apply them to any other Gainful Occupation.  Plaintiff's argument to that effect is absurd.

Equally absurd is the argument that Plaintiff does not have the requisite knowledge and experience to transition to either of the identified Gainful Occupations in the transportation industry: First-Line Supervisor of Transportation and Material Moving Machine and Vehicle Operation and Transportation, Storage, and Distribution Manager.   Plaintiff worked in the transportation and trucking industry for *twenty years* before the onset of his disability.  He now argues that, despite those twenty years of experience in the field, he does not have the training and experience to transition to a Gainful Occupation in that industry.

As Principal Life has argued in its opening brief and responsive brief, and as the evidence makes clear, Plaintiff has the functional physical capacity to perform occupations at the sedentary, light, and medium exertion levels.  The only question is whether Plaintiff lacks the ***ability*** to perform any Gainful Occupation.  Principal Life has identified several Gainful Occupations within Plaintiff's restrictions and limitations.   Furthermore, those occupations require very similar knowledge, skills, and abilities to the Gainful Occupation Plaintiff ***has been performing*** since 2010.  **Exhibit A** provides a graphic representation of the similarities in the requirements between the identified Gainful Occupations.  To the extent that Plaintiff has, in fact, been performing the occupation of Real Estate Sales Agent for the past seven years, any argument he makes that he lacks the core competencies to perform the other Gainful Occupations should be disregarded as contrary to the evidence.

DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR JUDGMENT ON
THE ADMINISTRATIVE RECORD - PAGE 11
Case No. 3:16-cv-05268-RJB

2364096v.1

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

## V. OCCUPATIONAL TITLES ARE IRRELEVANT WHERE THE DATA SUPPORTS THAT THE OCCUPATIONS ARE GAINFUL UNDER THE GROUP POLICY TERMS

The data speaks for itself.  The identified occupations are Gainful within the terms of the Group Policy. Plaintiff's arguments with regard to the titles of the occupations, specifically the Washington State's definition of Real Estate Broker, are nothing more than a smoke screen.  No matter what the titles of the occupations are, they clearly satisfy the Group Policy definition of Gainful Occupation based on the United States Bureau of Labor Statistics.

| OCCUPATION | ANNUAL MEAN WAGE IN SEATTLE/TACOMA/BELLEVUE, WASHINGTON AREA | GAINFUL OCCUPATION? (> $60,000/year) |
|---|---|---|
| First-Line Supervisor of Transportation and Material Moving Machine and Vehicle Operator | $69,810.00 | Yes |
| Transportation, Storage, and Distribution Manager | $101,170.00 | Yes |
| Real Estate Broker | $86,410.00 | Yes |
| Property, Real Estate, and Community Association Manager | $79,740.00 | Yes |

Principal Life has provided ample data to support its conclusion that there are numerous Gainful Occupations that Plaintiff either is or may reasonably become qualified based on education, training, or experience.  Plaintiff's arguments as to the titles of those occupations cannot overcome the data.

## VI. CONCLUSION

For all of the reasons discussed above, Principal Life respectfully requests that the Court grant Principal Life's Motion for Judgment, affirming its determination to terminate Plaintiff's disability benefits and entering judgment in Principal Life's favor while denying Plaintiff's cross-motion.

DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD - PAGE 12
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2364096v.1

DATED this 31st day of July, 2017

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP

By: */s/ Edna S. Kersting*

    Edna S. Kersting, Illinois #6277775
    *(pro hac vice)*
    55 West Monroe Street, Suite 3800
    Chicago, IL 60603
    Tel: 312-821-6162
    Fax: 312-740-1522
    Email: edna.kersting@wilsonelser.com

INSLEE, BEST, DOEZIE & RYDER, P.S.

By: */s/ Dan S. Lossing*

    Dan S. Lossing, WSBA #13570
    10900 N.E. 4th Street, Suite 1500
    Bellevue, WA  98004
    Tel: 425-455-1234
    Fax: 425-635-7720
    Email: dlossing@insleebest.com

**Attorneys for Defendant Principal Life Insurance Company**

DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR JUDGMENT ON
THE ADMINISTRATIVE RECORD - PAGE 13
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

2364096v.1

1

## **CERTIFICATE OF SERVICE**

2

     I hereby certify that on July 31, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

3

4

     Dated this 31st day of July, 2017

5
                                       */s/ Edna S. Kersting*

6
                                        Edna S. Kersting, Illinois #6277775
                                         *(pro hac vice)*

7
                                        55 West Monroe Street, Suite 3800
                                        Chicago, IL 60603

8
                                        Tel: 312-821-6162
                                        Fax: 312-740-1522
                                        Email: edna.kersting@wilsonelser.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR JUDGMENT ON
THE ADMINISTRATIVE RECORD - PAGE 14
Case No. 3:16-cv-05268-RJB

*Wilson Elser Moskowitz Edelman & Dicker LLP*
*55 West Monroe Street, Suite 3800*
*Chicago, Illinois 60603*
*Tel.: (312) 821-6162*
*Fax: (312) 704-1522*

24

2364096v.1